## Metropolitan West Side Elevated Ry. Co. v. Alfred J. Fortin.

1. WITNESSES—*Fact that Witness is in Custody of Officer of Jail Not Ground for Discarding Testimony.*—The mere fact that a witness was in custody of an officer from the jail when he testified affords of itself no sufficient ground upon which this court can discard his testimony or eliminate it from the record.

2. MASTER AND SERVANT—*Failure to Use Due Care to Employ Competent Servants Not an Assumed Risk.*—The failure to use proper care to employ competent servants is not a risk assumed as part of his service by an employe.

3. DAMAGES—*Where $15,000 is Not Excessive.*—Where plaintiff lost both an arm and a leg, admittedly through no fault of his own, while obeying in good faith an express order from his superior, $15,000 can not be held excessive.

Trespass on the Case, for personal injuries. Appeal from the Superior Court of Cook County; the Hon. PHILIP STEIN, Judge presiding. Heard in the Branch Appellate Court at the March term, 1902. Affirmed. Opinion filed February 27, 1903.

This is a suit for personal injuries, resulting in the loss of appellee's left leg, taken off about four or five inches from his body, and his left arm, removed at about the same relative distance. He recovered a judgment, which appellant seeks to reverse.

There are five counts in the declaration. The first avers, in substance, that it was the duty of appellee as an employe of appellant to couple and uncouple certain of the cars used

158    APPELLATE COURTS OF ILLINOIS.

VOL. 107.] Metropolitan West Side Elevated Ry. Co. v. Fortin.

by the latter in operating its road, at its Logan Square terminus; that in this employment it was his duty when a train reached that terminus to first uncouple the electric motor from the coaches to which it was attached at the front end of the train; that when so detached the motor was moved forward by its motorman in charge, while another motor car was backed to the rear of the train, and attached thereto by another employe, in order to withdraw the cars for the purpose of making up another train; that on the day of the accident, January 20, 1900, while appellee was so employed, he had uncoupled a motor in the usual manner, and said motor was moved forward about thirty feet; that " after so uncoupling said motor plaintiff was then and there ordered by the train dispatcher, who had general charge and supervision over said train, and who was not a fellow-servant of the plaintiff, to then and there cut off the forward coach from said train for the reason that said forward coach was defective, and it was desired by said dispatcher to send the same to the shop for repair, and plaintiff immediately, in obedience to said order of said train dispatcher, proceeded to uncouple said forward coach from the rear coach, and in doing so plaintiff was compelled to go under said train between the said cars in order to drive the pin out from the coupler, and while so engaged in driving said pin out of said coupling, and while using all due care and caution for his own safety, the said defendant company, through its said dispatcher, so carelessly and negligently managed said train, and a certain other motor car approaching said train from the rear, which was likewise further under the general control of said train dispatcher, so that the said motor car in the rear, ran with great force and violence against the rear coach of said train under which plaintiff was then engaged at work in uncoupling said car, and pushed and drove said rear coach of said car forward with such force and violence that the plaintiff was unable to extricate himself from said position, and the said coach was driven over said plaintiff's body, and his body was cut, lacerated and wounded so that it became necessary to ampu-

tate his left leg and left arm, and plaintiff was otherwise bruised, crippled and maimed for life, and has suffered great pain, both of body and mind, and by means thereof has been forced to pay out large sums of money in and about endeavoring to be cured of his said wounds, hurts and bruises and will remain permanently injured and crippled by the reason aforesaid."

The other counts charge respectively the use of an unsafe coupler contrary to the requirements of the statute (R. S., Chap. 141, Sec. 34); the employment of an incompetent and unskilled motorman, by whose carelessness and negligence the injury occurred; the failure to provide a reasonably safe place for appellee to work, whereby the plaintiff, while using all due care and caution, was injured; and that, it being the duty of appellant to so manage and operate its said motor cars and trains as not to unduly expose its employes to danger, it nevertheless so carelessly and negligently managed and operated its train that appellant was thereby injured while performing his duty as aforesaid.

O. W. DYNES, attorney for appellant.

GEMMILL & FOELL, attorneys for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

The facts relating to the nature of appellee's injury are not in dispute. He had been in the employ of appellant about two years, and for about three months prior to the accident had been doing the work of a coupler. Trains came in at the rate of one about every six minutes, to be uncoupled and coupled by appellee and his partner. The evening when he was hurt, appellee had uncoupled the motor car on an incoming train, and was then told by the train dispatcher, that there was a car in bad order in the train, which he was directed to uncouple. This he undertook to do. His co-worker at the other end of the train, one Snyder, signaled a motorman who was waiting on a switch to bring in his car to be in readiness to pull back the train. When within twenty feet, Snyder signaled him

160    APPELLATE COURTS OF ILLINOIS.

VOL. 107.] Metropolitan West Side Elevated Ry. Co. v. Fortin.

to stop his motor car, which he did. Appellee was still between the cars uncoupling, which his testimony shows sometimes took five minutes, when suddenly the motor car started ahead and bumped into the train. Snyder escaped unhurt, but appellee was knocked down and run over, losing his left arm and left leg. This is appellant's version of the facts. It is not averred in the declaration that this motor car was out of order, though there appears in the record evidence tending to show that this was the case, and that it had been several times reported as in bad order by the motorman. It is not contended that appellee himself was in any way negligent, or responsible for the injury he received.

Appellant's attorney contends that just what made the car start when it did, is unexplained; that the injury was occasioned by "an unexplained cause, or an unforeseen accident of which the defendant was not shown to have been the negligent cause." The jury returned a special verdict finding, as they say, from a preponderance of the evidence, that the proximate cause of appellee's injury was an order given by appellant's train dispatcher to the motorman in charge of the motor car which caused the injury. It is urged that this special finding is contrary to the preponderance of the evidence and inconsistent with other special findings.

There is evidence in behalf of appellee tending to show that the train dispatcher of appellant, on duty at that point, gave orders to appellee to "cut off the bad order coach;" that shortly after, while appellee was in between the cars doing this work and knocking out a coupling pin in obedience to such order, and while a motor car was waiting some twenty feet in rear of the train, in readiness to couple on and pull back the cars when appellee should have finished uncoupling them, the train dispatcher called out to the motorman in charge of that motor car, "Why in hell don't you back up there, and couple onto these cars and get out? The trains are late leaving here; all the trains are late on the road;" or words to that effect; that immedi-

ately the said motor car started rapidly forward and hit the coach in front of it with force such as to back the whole train some distance, knocking appellee down and causing him to be run over and injured as before stated. The motorman himself, who was in charge of the motor car which caused the injury, now testifies that he did not see nor hear the train dispatcher say anything of the kind; that he does not know what it was, if anything, which caused his motor car to start thus suddenly forward and strike the cars in front, and that he did nothing that he is aware of, to so start it.  It appeared, however, on cross-examination, that before the trial he had signed a statement to the effect that the train dispatcher in question "gave me a signal to back, and I did so, and put on the brake as soon as I felt the car strike;" and he admitted that he signed it and " that I believed it might be true."

Against this testimony tending to show that the train dispatcher did give such an order, in obedience to which the motor car was run against the cars appellee was coupling, is opposed the statement of the dispatcher himself that he did not give any such order or signal.  There is direct contradiction in the testimony on this point which it is impossible to reconcile.  It is a material question of fact.  It is sought by appellant's attorney to break the force of the evidence referred to, given in behalf of appellee, by attacking the character of the witness Post, who, it seems, was in the service of appellant at the time of the accident, but was serving a jail sentence at the time he testified.  He stated that he had been " on a drunk and got into trouble."  The jury, however, had the witnesses before them, and the fact that the witness was then in jail was fully brought out.  The jury were charged with the duty of settling the controversy of fact; and had better opportunities in this case than this court can possibly have, with the record only before it, of forming a correct opinion of the witnesses and their testimony.  There is nothing in the testimony of that witness, so far as we can discover, tending to indicate that it is not entitled to fair consideration,

162    APPELLATE COURTS OF ILLINOIS.

VOL. 107.] Metropolitan West Side Elevated Ry. Co. v. Fortin.

and the mere fact that he was in custody of an officer from the jail when he testified, affords of itself no sufficient ground upon which this court can discard it or eliminate it from the record.

It is urged that the special findings are inconsistent and conflicting. One of these finds that the proximate cause of the injury was the order above referred to, said to have been given by the train dispatcher to the motorman, and another that the motorman was negligent, and that his negligence contributed to the injury. This alleged inconsistency is, we think, at the most only apparent. The order given by the dispatcher might be negligent, and the manner in which the motorman executed such order might also be negligent. There are further special findings to the effect that the motorman was not using ordinary care in his duties, and that appellant did not use such care in retaining him in its employ up to the time of the accident. We need not recite the evidence which it is claimed tends to support these conclusions. It suffices to say there is evidence *pro* and *con* on these points.

Appellant urges that it is absurd to say the motorman caused the car to move, because it is clearly shown that it "shot forward with great force and violence, so hard that the impact drove the train thirty-five feet." We are unable to perceive the alleged absurdity, in view of the evidence tending to show that it had behaved in the same way before, when started up suddenly.

It is urged that the trial court should have given the written instruction requested by appellant at the conclusion of all the evidence, directing a verdict of not guilty. There was, as we have already said, evidence tending to support the plaintiff's case, and such an instruction would have been erroneous.

It is said the motorman and appellee were fellow-servants. This is as a general rule, but not always, a question of fact to be determined by the jury. Norton Bros. v. Nadebok, 190 Ill. 595–599. It is not necessary in this case to consider the question at length. Appellee testifies he

never knew who the motorman was "who was coming in or going out," and it is argued in his behalf that the motormen and appellee were not so associated and dependent upon each other in their work as to bring them within the rule in regard to fellow-servants.    However that may be, the jury found that appellant was negligent in retaining this particular motorman in that employment in view of the complaints of his incapacity which had been brought to appellant's knowledge.    The failure to use proper care to employ competent motormen, if such failure there is, is not a risk assumed as part of his service by an employe. Consolidated Coal Co. v. Haenni, 146 Ill. 614.    We find no error in the refusal of the instruction upon this point as requested by appellant's attorney, nor of the other instruction, the refusal of which is complained of, relating to assumed risk.    The hazard of an injury inflicted as in the case at bar is not, we think, one of those assumed by the contract of service.

It is urged that the verdict awarding appellee $15,000 is excessive.    This is very frequently a difficult matter for a reviewing court to determine.    Appellee lost both an arm and a leg, admittedly through no fault of his own, while obeying in good faith an express order from his superior.    No proof was introduced as to appellee's earning capacity, and there is no fixed standard by which to fix pecuniary compensation for such losses, disfigurement and suffering as he has experienced.    On the whole we are able to find no satisfactory reason to justify us in holding that the verdict is excessive.    It is clearly unnecessary, in view of what has been said, to consider at length certain other matters presented in the briefs and arguments of counsel.    We are unable to find in this record any sufficient reason to set aside the verdict and judgment.    The judgment of the Superior Court must be affirmed.