.NORTON BROS.

*v.*

EMIL NADEBOK.

*Opinion filed June 19, 1901.*

| | |
|---|---|
| 190 | 595 |
| 200 | [2]110 |
| 200 | [1]111 |
| 200 | [2]112 |
| 190 | 595 |
| 203 | [1]457 |
| 106a | [2] 27 |
| 107a | [1]162 |
| 109a | [2]512 |
| 190 | 595 |
| 207 | [1] 16 |
| 207 | 600 |
| 190 | 595 |
| 210 | [1]353 |
| 210 | [2]571 |
| 210 | [1]573 |
| 112a | [2]517 |

1. FELLOW-SERVANTS—*when question of fellow-servants is for the jury.* Whether or not the operator of a machine and his helper were fellow-servants at the time of the helper's injury is properly left to the jury as a question of fact, under evidence tending to show that the operator had authority to direct the movements of the helper, that he stopped the machine and ordered the helper to put in his hand and remove an obstruction, and without waiting for the latter to withdraw his hand started the machine, and thereby occasioned the injury.

2. SAME—*when superior is not, as a matter of law, the fellow-servant of his subordinate.* If the perilous position assumed by a servant is the result of a command from his superior in exercising his authority as vice-principal, the mere fact that the act which occasioned the servant's injury was performed by such superior as a part of the regular duties for which he was employed by the master does not, as a matter of law, create the relation of fellow-servants between the parties at the moment of injury.

*Norton Bros. v. Nadebok,* 92 Ill. App. 541, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JESSE HOLDOM, Judge, presiding.

R. S. THOMPSON, and C. L. JENKS, Jr., for appellant.

JAMES M. SHEEAN, and J. W. KASTE, for appellee.

Mr. JUSTICE HAND delivered the opinion of the court:

This is an action on the case brought by the appellee in the superior court of Cook county, against the appellant, to recover damages for a personal injury sustained by him while in the employ of the appellant.

The declaration consists of three counts. The first alleges that the defendant, which was engaged in the

business of manufacturing tin cans, directed plaintiff to take cans from a machine known as a "body-maker," which shaped the form of the can, to another machine for completion; that the "body-maker" was defective, in that cans would sometimes catch or stick therein, making it necessary for plaintiff to insert his hand in the machine and pull out the can so caught and thus incur the risk of injury, all of which the defendant had knowledge of and the plaintiff had not; that the defendant gave him no information as to the dangers incident to the use of the machine; that a can becoming caught, plaintiff was ordered by his superior in charge of the machine, who was not his fellow-servant, to take out the "catch;" that he attempted to do so, using due care, etc., and that the machine descended without warning upon his hand, cutting off the little finger and otherwise injuring the hand. The second count alleges that at the time of the injury one Banning was in charge of the operation of the machine and had the direction and control of the plaintiff, and was not his fellow-servant; that a can becoming caught in the machine, the plaintiff, pursuant to Banning's direction, and while in the line of his duty, inserted his hand into said machine for the purpose of removing the can which was caught, using due care, etc.; that while plaintiff's hand was in the machine, Banning then and there negligently set the machine in motion, causing it to descend upon plaintiff's hand and injure the same, etc. The third count avers that in the operation of the machine, cans frequently caught therein, making it necessary for the operator or his assistant to insert his hand into the machine to loosen or remove the can; that because of there being sharp blades in the machine, near which the hand would have to be inserted, the duties of the persons so engaged were fraught with unusual danger; that it was the duty of the defendant, upon assigning an inexperienced person to such work, to fully instruct him, etc.; that the defendant wrongfully and neg-

ligently employed plaintiff, a minor of seventeen years, upon said work; that the plaintiff was without experience, and incapable, because of his years, of appreciating the danger of such employment; that the defendant failed to instruct him, etc., whereby plaintiff, in attempting to perform his said duties and to take out a can which had become stuck, using the care and caution commensurate with his knowledge and appreciation of the danger, etc., had his right hand caught and the finger cut off, etc.

The defendant pleaded the general issue, and upon a trial before a jury there was a verdict and judgment for $1000 in favor of the appellee, which has been affirmed by the Appellate Court for the First District.

At the close of the evidence for the plaintiff, and again at the close of all the evidence, the defendant made a motion to take the case from the jury, which motion was overruled by the court, and which action of the court is assigned as error.

In this court, as in the Appellate Court, appellant seeks a reversal without remanding, and also, as in that court, makes but one point in argument, which, as summarized at the conclusion of its argument, is, that Banning, in obeying whose orders appellee was injured, was the fellow-servant of appellee, and that in consequence of such relationship appellant is not liable to appellee for Banning's negligence.

The appellant was engaged in manufacturing tin cans at its factory located in Maywood, Illinois. One of its employees, by the name of Banning, was engaged in operating a machine known as a "body-maker." He had charge thereof, starting and stopping it by means of a lever attached to a friction clutch connected with overhead shafting. He "fed" into the machine oblong pieces of tin, called "blanks," which were by the machine bent around a "horn," the sides hooked together and thus formed into cylinders constituting the body of tin cans, —hence the name of the machine, "body-maker." The

"horn" was at the back part of the machine, and Banning, when engaged in feeding in the "blanks," stood or sat in front of the machine. The cylinder-shaped product of the "body-maker" fell from the "horn" into a chute and from the chute into a bin. The appellee was engaged in carrying these "bodies" in a basket to another machine which soldered the side seams. One of the pieces of tin which Banning had fed into the "body-maker" becoming caught in some way at or near the "horn," Banning stopped the machine by means of the lever and directed the appellee, who was at the rear of the machine putting "bodies" into a basket, to take out the "catch," as pieces of tin which chanced to be caught in the machine were called. Thereupon appellee, while the machine was at rest, put his hand into it for the purpose of pulling out the "catch," and then Banning, before appellee had withdrawn his hand, pulled the lever and set the machine in motion. Appellee's hand was caught and crushed between the "horn" and that portion of the machine which came up against it.

There was a conflict in the evidence as to whether it was plaintiff's duty to pull out "catches," the method of performing such duty, his proper position when at work, whether Banning had any authority over him, and what directions he received when sent to work. Appellee testified that on the morning of the day in which he was hurt he was first engaged in piling tin in another department, the foreman of which was one Magee; that Magee sent him to the "body-making" department; that there he was told to carry the cans from the "body-maker," which Banning was operating, to another machine, keep the operator of the other machine going, and to "hustle up;" that he had never worked at the "body-maker" until the day he was injured; that several "catches" occurred, and Banning at each time of such occurrence told him to take the "catch" out; that on one of these occasions he said to Banning, "Why can't

you take it out?" to which Banning answered, "Take it out; you have got to do what I tell you." A number of witnesses on behalf of appellee testified that they had worked for appellant, and that in the manufacture of cans such as were being manufactured at the time of the injury two men were engaged at the machine,—a feeder and a helper; that the duty of the feeder is to feed the tin into the machine and to run the machine, and that the duty of the helper is to take the cans away and do whatever the feeder tells him to do.

As a general rule, the question whether servants of the same master are fellow-servants is a question of fact to be determined by the jury from all the circumstances of each case. (*Lake Erie and Western Railroad Co.* v. *Middleton*, 142 Ill. 550; *Louisville, Evansville and St. Louis Railroad Co.* v. *Hawthorn*, 147 id. 226; *Mobile and Ohio Railroad Co.* v. *Massey*, 152 id. 144; *Chicago and Alton Railroad Co.* v. *House*, 172 id. 601; *Chicago and Alton Railroad Co.* v. *Swan*, 176 id. 424.) If, however, the facts are conceded or there is no dispute with reference thereto, and all reasonable men will agree, from the evidence and the legitimate conclusions to be drawn therefrom, that the relation of fellow-servants exists, then the question becomes one of law, and not of fact. *Chicago and Eastern Illinois Railroad Co.* v. *Driscoll*, 176 Ill. 330.

In this case, there being a conflict in the evidence as to whether Banning had authority over the appellee, it is conceded by the appellant that, the Appellate Court having affirmed the judgment of the superior court, that controverted question of fact has been settled in favor of appellee, and it is admitted that Banning was a superior servant, and had authority from appellant to direct appellee to put his hand into the machine and take out the "catch," but it is contended that as to the manual act of starting the machine at the instant when the injury occurred, as Banning had no delegated authority from the common master to order some one else to set the

machine in motion instead of himself doing so, but was himself employed to do that act with his own hands, he was not as to that act the superior but was the fellow-servant of appellee, and that appellant is not liable for the consequences of Banning's negligence in starting the machine while appellee's hand was in the same, as such negligence did not consist in the abuse of his delegated authority. In other words, it is conceded that Banning was a superior servant when he ordered appellee to put his hand into the machine and take out the "catch," but, it is said, in the act of immediately starting the machine he was his fellow-servant, and it is contended, as it is conceded that Banning was employed to operate said machine, the question as to whether he was the fellow-servant of appellee at the immediate time when he started the machine is a question of law. We cannot agree with such contention. When the appellee was ordered by his superior servant to put his hand into the machine and take out the "catch," in the absence of any warning or notice he had the right to assume that his superior, who gave the order, would not by his own negligence make the act which he had commanded him to do, and which he was bound to obey, unsafe.

In *Chicago and Alton Railroad Co.* v. *May,* 108 Ill. 288, we say (p. 298): "The true rule on the subject, as we understand it, is this: The mere fact that one of a number of servants who are in the habit of working together in the same line of employment, for a common master, has power to control and direct the actions of the others with respect to such employment, will not, of itself, render the master liable for the negligence of the governing servant resulting in an injury to one of the others, without regard to other circumstances. On the other hand, the mere fact that the servant exercising such authority, sometimes, or generally, labors with the others as a common hand, will not, of itself, exonerate the master from liability for the former's negligence in the exercise of his

authority over the others.  Every case, in this respect, must depend upon its own circumstances."

In *Pittsburg Bridge Co.* v. *Walker*, 170 Ill. 550, the plaintiff was injured while engaged as an employee of the defendant in moving heavy pieces of iron framework intended to be used in constructing a bridge across the Chicago river.  In the process of moving such framework it was necessary to the safety of the employees that a "tag line" should be attached to the framework wherewith to steady and control the same while it was being hoisted by a block and tackle.  One Farnsworth, who occupied the position of foreman, refused to use such "tag line" but undertook to hold and control said framework by hand, whereby the framework swung around and struck the appellee.  In discussing one of the defendant's refused instructions the court say (p. 553):  "The argument in support of the principle sought to be announced by the instruction as asked is, that at the immediate time appellee received the injury complained of, Farnsworth was exercising the duties of a common laborer and at that exact moment was a fellow-servant with the appellee; that if appellee was injured, as he contends, because of the negligent failure or inability of Farnsworth to hold and control the swinging framework, the common master is not liable for such act of Farnsworth, whether it resulted from his negligence or lack of strength, for the reason it was the act of a fellow-servant.  This view is too narrow.  *  *  *  If the appellant, through Farnsworth as vice-principal, abandoned the use of a tag line,— a confessedly appropriate and safe device,—and adopted an improper and unsafe method of accomplishing such removal, and injury resulted to appellee in consequence thereof, under such circumstances as the master would be liable if Farnsworth had not personally participated in the execution of the plan, no reason is perceived why liability should be avoided upon the ground Farnsworth personally assisted in endeavoring to perform the work.

In so assisting, Farnsworth voluntarily assumed temporarily to labor as a common workman, but he was not any the less the representative of the appellant company nor his position any the less one of superiority."

In *Metropolitan West Side Elevated Railroad Co.* v. *Skola,* 183 Ill. 454, the foreman ordered a car repairer to work under a car on a repair track, and then, as motorneer, ran other cars onto such repair track and thereby injured said car repairer. On page 457 it is said: "The question as to what cars should be brought from the main track in and upon this cleaning, inspecting and repairing track, and when such cars should be so brought in and where cars so coming in should be placed thereon, was to be determined by McCrumb in the exercise of the duties devolving upon him in his capacity as vice-principal. Whether if, after he had directed the deceased to engage in work beneath a car standing on the cleaning, inspecting and repairing track, ordinary care and due regard for the safety of the deceased required that the foreman, before putting into execution his determination to move other cars upon the same track, should have in some way notified or warned the deceased of what he, as foreman, had determined and was about to do, was a question of fact for the jury. If it was negligence to cause cars to be put in motion on the track where other cars stood under which workmen were engaged in their duties, without first warning the workmen who would be endangered by such course, then the negligence was that of the master, acting through the foreman as the representative of the master."

In *Taylor* v. *Evansville and Terre Haute Railroad Co.* 121 Ind. 124, (6 L. R. A. 584,) while the appellant, a machinist, was engaged in the work of removing the key of the "equalizer" under the master mechanic's direction, the equalizer was negligently pulled out of its place by the master mechanic, and it fell upon the appellant and very severely injured him. The trial court took the case from

the jury on the ground the master mechanic and the appellant were fellow-servants. In reversing the case the court say: "It is important to bear in mind that the appellant was performing a special duty enjoined upon him by a superior whom it was his duty to obey. Although the work was within the general scope of his service, nevertheless he was performing it under a special order. It was therefore a wrong on the part of the agent having the right to order him to do the specific work, to increase the peril of the service by his own negligence. The employee, acting under the specific order, had a right to assume, in the absence of warning or notice, that his superior who gave the order would not, by his own negligence, make the work unsafe."

Had the superintendent of the factory ordered the appellee to remove the "catch" and then immediately ordered Banning to start the machine without giving appellee notice and an opportunity to withdraw his hand, there would be no question as to the liability of appellant, and we are unable to see how the fact that Banning had no authority to order any other person to start the machine, but was expressly employed so to do himself, can relieve appellant from liability. The giving of the order to appellee to remove the "catch" and the act of starting the machine occurred so closely together that the consequences resulting therefrom cannot be separated, and the master is liable therefor.

We think the question whether appellee and Banning were fellow-servants at the time the injury occurred, under the circumstances of this case, was a question of fact for the jury, and that the court did not err in declining to direct a verdict for the defendant. The judgment of the Appellate Court will therefore be affirmed.

*Judgment affirmed.*