## THE ILLINOIS SOUTHERN RAILWAY COMPANY

*v.*

## ALTA MARSHALL, Admx.

*Opinion filed June 23, 1904.*

1. FELLOW-SERVANTS—*question of existence of relation of fellow-servants is ordinarily one of fact.* The question of the existence of the relation of fellow-servants is a question of law only when there is no dispute as to the facts and the evidence, and all legitimate inferences therefrom are such that all reasonable men will agree in their conclusions.

2. SAME—*when question of fellow-servants cannot be urged in Supreme Court.* Whether the deceased and the servant who caused his injury were fellow-servants cannot be urged in the Supreme Court, where that question was submitted to the jury under the appellant's instructions applicable to the conflicting evidence and an adverse verdict returned, which was upheld by the Appellate Court.

*Illinois Southern Railway Co.* v. *Marshall,* 112 Ill. App. 514, affirmed.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Randolph county; the Hon. WILLIAM HARTZELL, Judge, presiding.

This is an action in case, begun on December 22, 1902, in the circuit court of Randolph county by the appellee, as administratrix of the estate of her deceased husband, William S. Marshall, against the appellant company to recover damages for the death of said William S. Marshall. The plea of the general issue was filed. The trial in the court below resulted in verdict and judgment in favor of appellee for $5000.00. An appeal was taken to the Appellate Court, and the latter court has affirmed the judgment of the circuit court. The present appeal is prosecuted from such judgment of affirmance.

The death of William S. Marshall occurred on February 5, 1902, and resulted from injuries, received at about 5:30 P. M. on February 3, 1902, while he was in the employment of appellant. The declaration alleges, in substance, that the injuries were inflicted while the said

Marshall was, with all due care and caution, attempting to lower two certain "leads," which were heavy upright timbers thirty-eight feet long, used in connection with a certain pile-driver on a flat-car; and which leads one Fred Hoff, alleged to be the boss of said Marshall and the foreman or vice-principal of the appellant, had negligently ordered Marshall to lower. The declaration charges that Hoff negligently failed to fasten a certain rope in a yoke-iron at or near the bottom of said leads to control them, while being lowered, and to prevent them from falling; it being alleged that it was the duty of said Hoff to so fasten said rope before giving said order.

The material facts in the case are substantially as follows: The appellant on February 3, 1902, was operating a single track railroad between Salem, in Marion county, and Chester, in Randolph county, and had in its employ a certain gang of men, engaged in bridge work, and who were employed by appellant to operate a pile-driver along the line of its road between Coulterville, in Randolph county, and Oakdale in Washington county, at or near a place, known as McKinley. On February 3, 1902, appellant was engaged in driving piles at or near the point, where its line crosses Mud creek in Washington county. The pile-driving machinery was rigged up on a flat-car, and was operated from the car standing on the railroad track. The pile-driver, or large hammer, was worked up and down between two large upright timbers, called "leads," about thirty-eight feet in length. These leads, when in position for work, were fastened on the front end of the flat-car, and extended about four inches from the rail upward, and were supported, when in an upright position for work, by certain props or "stiff legs." When in position for work, they were swung out over one end of the car, and the lower ends of the leads projected nearly to the ground, being from four to six inches above it. On the other end of the car was a certain stationary engine, which worked the pile-driver,

which pile-driver was then and there used to drive piles in, and to the side of, the railway track. When the pile-driver was in use, the car, on which were placed said leads, and said stationary engine and the machinery and appliances, incident to the working of the pile-driver, stood on the railroad track of appellant. When a passenger or freight train had to pass over said track, the car, containing the pile-driver and the machinery and appliances in connection with it, had to be moved off to a siding or side-track, so as to be out of the way of such passing passenger or freight train. When the flat-car was to be so moved, the leads were lowered and allowed to rest on a specially constructed piece on the deck of the car about eight feet in height, called the "lead rest." The method of lowering the leads was to attach one end of a strong rope to the yoke-iron in the leads, and to draw it taut about a spool operated by the engine. The legs or props would then be removed, or knocked away, and the leads would be gradually lowered to the "rest," as the line paid out from the spool. In order to get the flat-car, containing the pile-driver and its machinery and appliances, to the side-track or siding, so that a passing train could pass over the railroad track, a locomotive engine, kept at the place for that purpose, would be attached to this flat-car, and the flat-car would be hauled on to the siding by such locomotive engine. The car, on which the pile-driver as aforesaid was placed, was also hauled in like manner to and from the work before the commencement, and at the end, of each day's work. When the flat-car with the pile-driver thereon was so removed to the side-track or siding, it was necessary to lay said leads or upright timbers down upon the lead rest, placed upon the car for that purpose, so that said leads or long timbers might be transported in safety to the men engaged in said work and upon said car. The rope, which it was necessary to fasten to the yoke-iron on or near the bottom of the leads, as above stated, extended from a

certain sheave and was fastened or attached to a winch-head in the engine room, where the stationary engine was located on the car. The purpose of fastening the rope in the manner stated was to control the leads, as they were let down upon the lead rest, and thus cause them to be let down gradually, and slowly, and under control, and so as to prevent them coming down suddenly and injuring any person or persons, who might happen to be upon the car.

The declaration charges that it was the duty of said Hoff, who is alleged to have been appellant's foreman and had charge of the men doing the work, to hook the rope to said yoke-iron before ordering the leads to be thus lowered. On the day of the injury, the deceased, William S. Marshall, was a member of the gang operating the pile-driver, and his proper position was on said car, and it was a part of his duty to assist in lowering said leads. The declaration charges that, on the day aforesaid, said Hoff ordered William S. Marshall to lower said leads to and upon the said lead rest, so that the car might be hauled to a certain side-track, and that Marshall proceeded with ordinary care for his own safety to carry out the orders of Hoff, and to lower said leads; that Marshall was bound to obey said orders; that said leads then and there suddenly fell upon said Marshall, "on account of said Fred Hoff, who was not then and there a fellow-servant of said Marshall, having carelessly and negligently failed and omitted to hook said rope into said yoke-iron, as it was his duty to so hook and fasten said rope, and said Marshall, while in the exercise of ordinary care, and while acting under the orders of his said foreman, Fred Hoff, was then and there struck by said leads, as a direct and immediate result of the negligence and carelessness of said Fred Hoff in failing to hook said rope into said yoke-iron, and of said negligent and careless order given by said Hoff, as foreman, to said Marshall, and the said William S. Marshall then

and there received injuries from which he afterwards, to-wit, on February 5, 1902, died." Hoff's duties required him to be upon the ground near the front of the car. On the day of the accident, the regular engineer of the stationary engine was absent, and Newton Harben, who was superintendent of bridges and bridge building for the appellant, and who employed the men and appointed the bosses of the bridge gangs, placed his son Mabre Harben in charge of the engine, and gave Fred Hoff control of the men engaged in driving the piles. In this position Hoff had authority to give orders and directions concerning the work to all the men, except the engineer.

The evidence tends to show that the deceased, Marshall, began work for the company in September, 1901, as a member of the bridge gang, but that he had been working with the pile-driver in question only a few days before he was hurt, and that on that day he had worked on top of the car for the first time, and had then for the first time attempted to lower the leads himself; that previously Hoff had climbed on the car, and assisted Marshall to lower the leads, and showed him how it was done, he being inexperienced in the work.

The "stiff legs" were timbers used to steady and support the leads, and prevent them from falling when in an upright position. When the hook at the end of the rope was fastened into the yoke-iron, so as to control the momentum of the leads when they were lowered; and so as to lower them slowly and under control, it was the duty of the man on the top of the car in the place, called the "mink-trap," to knock out these "stiff legs," and then the leads would be laid over on the lead rest, falling of their own weight and force, being prevented by the rope from falling too suddenly. If the rope was not properly fastened, the leads would fall with great force of their own momentum and weight.

As is said by the Appellate Court in stating the facts of the case: "About the time for closing the day's work,

the men having just finished driving a pile outside of the track, and a passenger train being about due, Hoff gave orders to them to gather up their tools, place them on the car, and swing the leads to the center. He also signaled the engineer of the locomotive, which accompanied the car, to couple on to the car and pull off the bridge. The leads were swung to the center, and the rope, used to lower them, tightened. The hook in the rope was, however, at the time, fastened to the draw-bar underneath the car, Hoff having neglected to attach it to the iron yoke on the leads. Marshall then proceeded to knock out the props, and the leads, not having the rope to hold and ease them down, fell upon him, inflicting the injuries from which he subsequently died. It is claimed by appellee that Hoff gave the order to lower the leads just prior to the time Marshall knocked out the props."

The evidence tends to show that, when the movement began to haul off the flat-car with its pile-driver and machinery and appliances to the side-track, a period of ten minutes only would elapse before a passenger train would come along, and pass over the track, from which the flat-car was removed.

F. M. TRISSAL, and R. J. GODDARD, for appellant.

M. W. BORDERS, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The questions, involved in this case, are within a very narrow compass. No errors are assigned as to the action of the trial court in admitting or excluding evidence. Only one instruction was given for the plaintiff below, and no objection is urged against this instruction by the appellant. Seven instructions, asked by the appellant, were given by the court, and no instruction, asked by the appellant, was refused, except the instruction asked at the close of the plaintiff's testimony, and also again at

the close of all the evidence in the case, directing the jury to find for the defendant. This latter instruction was refused by the court, and its refusal is the only error insisted upon by counsel for appellant in their brief.

It is not claimed, as we understand the argument, that the deceased, William S. Marshall, was not in the exercise of due care for his own safety when the accident occurred. He was on the car, engaged in the performance of his duty, which was to remove the props when the leads, or upright timbers, were to be lowered, and there is no evidence, tending to show that he was guilty of any contributory negligence.

Nor is it seriously claimed that Hoff was not guilty of the negligence, which caused the injury to Marshall. It was the duty of Hoff to attach the rope to the yoke-iron, in order that the leads might be gradually lowered, so as to rest upon the lead rest. Unless the rope was so attached to the yoke-iron, the leads would fall suddenly and rapidly and not be gradually lowered. Hoff neglected to attach the rope to the yoke-iron, but attached it, or suffered it to be fastened, to the draw-bar under the car. This was certainly great negligence on the part of Hoff. The evidence tends to show that the deceased, Marshall, was unable to see from the position, which he occupied on the car, whether or not the rope was properly attached to the yoke-iron, and he was justified in supposing that the rope was so properly fastened when he removed the props from the leads, or upright beams.

The claim of the appellant is, that Hoff and Marshall were fellow-servants, and that, therefore, the appellant is not liable, because Marshall was injured by the negligence of a fellow-servant. It is furthermore insisted by the appellant, that Hoff and the deceased, Marshall, must be held to have been fellow-servants as matter of law, and that the question, whether or not they were fellow-servants, was not a question of fact. Appellee insists that Hoff was the foreman of the appellant com-

pany, and had charge of the men and directed them in their work; that Marshall was one of the gang of workmen, who were acting under Hoff's direction; that it was not only the duty of Hoff to attach the rope to the iron yoke on the leads, but that it was also his duty to give the order to lower the leads when the proper time came; that Hoff was guilty of negligence in that he ordered the leads to be lowered, and thereby directed Marshall to remove the props under the leads, without having attached the rope to the iron yoke, and that the injury, which resulted in Marshall's death, was caused by the act of Hoff, as foreman and representative of the appellant, in negligently giving the order, which Marshall obeyed, and in consequence of which he lost his life.

There is conflict in the testimony upon certain material questions of fact. In the first place, Hoff testified that he was not foreman. At least three witnesses, however, testified that he was foreman upon that day, and directed the movements of the gang, which was at work operating the pile-driver. Newton Harben, the superintendent of bridge construction for the appellant, appointed Hoff to act as foreman and control and direct the movements of the men on that day, because, the regular engineer being absent, his son, Mabre Harbin, who had previously acted as foreman, was obliged to perform the duties of engineer; and it was not possible for the engineer, while operating the engine, to direct the movements of the men in the other part of the work. Not only does the evidence tend to show that Hoff was foreman upon the occasion in question, but counsel for appellant substantially admit the fact in their brief, when they say: "We cannot deny that, on the day in question, Hoff was invested with a measure of authority over the other members of the gang. He, doubtless, was a vice-principal in certain respects."

Appellant also insists that, even if Hoff was acting as foreman upon the day in question, yet that he did not

give the order to lower the leads. Several witnesses contradict him upon this subject. Mabre Harbin and Winston both testify that he did give the order to lower the leads. He, himself, admits in his testimony that he gave the order to "swing to the center," and it is conceded on all hands that the order to lower the leads was involved in the order to swing to the center, because the only object of swinging the beams to the center from their position outside of the track, or near the outside of the track, was to lower them to the lead rest, and prepare for the removal of the car to the side-track. After a careful examination of all the evidence, we are satisfied that there is proof tending very strongly to show, both that Hoff was foreman, and that he gave the order, obeyed by Marshall and resulting in his death, to lower the leads at the time in question.

The theory of appellant seems to be that the injury resulted from the failure of Hoff to attach the rope to the yoke-iron, and that, in performing or failing to perform such duty, he was acting as a fellow-servant with Marshall. While it may be true that the injury resulted to some extent from the failure to attach the rope to the iron yoke, yet it is also true that the injury resulted from the order of Hoff, as foreman or vice-principal, to lower the leads, and, as preliminary thereto, to remove the props from under the leads: The duty to attach the rope to the iron yoke was preliminary to giving the order to lower the leads, and he should not have given that order, unless the rope was properly attached, because, without a proper attachment of the rope, the leads would fall and injure persons upon the car. If as fellow-servant he neglected his duty in not attaching the rope, as foreman having control of the men he was guilty of negligence in ordering the leads to be lowered before the rope was properly attached. In giving this order as foreman or vice-principal, he was representing the appellant, and the appellant is certainly responsible under the de-

cisions of this court for his negligence. Where an injury to a servant is the combined effect of the negligence of the master and of a fellow-servant, the servant may recover. (*Pullman Palace Car Co.* v. *Laack*, 143 Ill. 242).

In *Chicago and Alton Railroad Co.* v. *May*, 108 Ill. 288, we said (p. 299): "The mere fact that the servant exercising such authority sometimes, or generally, labors with the others as a common hand, will not of itself exonerate the master from liability for the former's negligence in the exercise of his authority over the others. Every case, in this respect, must depend upon its own circumstances."

In *Norton Bros.* v. *Nadebok*, 190 Ill. 595, we said (p. 600): "When the appellee was ordered by his superior servant to put his hand into the machine and take out the 'catch,' in the absence of any warning or notice, he had the right to assume that his superior, who gave the order, would not by his own negligence make the act which he had commanded him to do, and which he was bound to obey, unsafe."

In *Consolidated Coal Co.* v. *Gruber*, 188 Ill. 584, we said (p. 588): "If the action was taken by him [the foreman], in the discharge of his duties as vice-principal, his position was one of superiority, and not that of a fellow-laborer. The fact, that in the discharge of his duties as assistant mine manager he engaged temporarily in work usually performed by Nagle, would not justify the declaration, as matter of law, that he became a fellow-servant of appellee." In *Pittsburg Bridge Co.* v. *Walker*, 170 Ill. 550, it was said (p. 554): "When the negligent act complained of arises out of, and is the direct result of, the exercise of the authority, conferred upon him [the foreman,] by the master over his co-laborers, the master will be liable." Here, the true test is, whether the negligent act complained of arose out of, or was the direct result of, the exercise of the authority conferred upon Hoff as foreman. The proof tends to show that he directed the men in their work upon that day, and that

such work was done subject to his orders and directions. When it was known that a passenger train was approaching and would pass over the track in ten minutes, Hoff, in order to get the flat-car out of the way and prevent a collision, began to direct the men in their movements. In his testimony he says that he ordered them to swing to the center; that he gave the engineer a signal to pull off the bridge; that he ordered some of the men underneath to bring out the tools, and put them on the driver. These were the orders of a master, and not the ordinary orders, given by one laborer to another merely to carry out and accomplish a common work. The orders so given affected every man in the crew at work, except the stationary engineer. They pertained to different matters, and involved discretion, and were for the protection of the master's property, and the guidance of the crew or gang. Hoff was invested with the discretion to determine whether or not the time had arrived for the removal of the flat-car to the side-track, and whether or not the time had arrived for the lowering of the leads and for the coupling of the locomotive engine to the flat-car, so as to remove it to the side-track. The fact, that he was thus invested with discretion, and gave the order in pursuance of the exercise of such discretion, made his position and authority those of a foreman or vice-principal. In *Metropolitan Elevated Railroad Co.* v. *Skola,* 183 Ill. 454, it was held that the determination by a foreman of an electric railroad, in his capacity of vice-principal, to run certain cars in on the repair track, after ordering a car repairer to work under a car on such track, is the act of the master, and if his failure to notify the car repairer of his determination was negligence, then the fact, that he acted as motorman in running such cars, would not relieve the master from liability under the doctrine of fellow-servants, and in that case we said (p. 457): "The contention, therefore, is, the court should have declared, as matter of law arising out of undisputed facts, that

the relation of fellow-servant existed between the deceased and the said McCrumb, and that the doctrine of *respondeat superior* did not apply. But the question as to what cars should be brought from the main track in and upon this cleaning, inspecting and repairing track, and when such cars should be so brought in, and where cars so coming in should be placed thereon, was to be determined by McCrumb in the exercise of the duties devolving upon him in his capacity as vice-principal."

The question, whether the relation of fellow-servants exists, only becomes a question of law, and not of fact, when there is no dispute with reference to the facts, and when the evidence and the legitimate conclusions to be drawn therefrom are such, that all reasonable men will agree to the existence of the relation of fellow-servants. (*Slack* v. *Harris*, 200 Ill. 96; *Illinois Steel Co.* v. *Coffey*, 205 id. 206; *Chicago and Eastern Illinois Railroad Co.* v. *Driscoll*, 176 id. 330; *Norton Bros.* v. *Nadebok, supra*). In the case at bar, it cannot be said that the question, whether or not Hoff and Marshall were fellow-servants is a question of law, because, in the first place, as has already been shown, the material facts are not undisputed, but there is a sharp conflict in reference to the same; and, in the second place, the evidence, and the legitimate conclusions to be drawn from it, are not such that all reasonable men will agree to the existence of the relation of fellow-servants. As is well said by the Appellate Court: "We are not prepared to say from the proofs in this case that all reasonable men would agree that the relation of fellow-servants existed between Hoff and Marshall." On the contrary, instead of being fellow-servants, performing such duties as to bring them into habitual association, so that they exercised a mutual influence upon each other promotive of proper caution, the one was subject to, and acting under the direct orders of, the other as a vice-principal and representative of the employer.

But, in addition to what has been said, the questions whether or not Hoff and the deceased were fellow-servants, and whether or not Hoff was a foreman or vice-principal representing the employer, were questions of fact, which were submitted to the determination of the jury under instructions, given for appellant, and which the appellant itself asked in its own behalf. In *Offutt* v. *World's Columbian Exposition*, 175 Ill. 472, we said (p. 478): "It is also insisted that the evidence showed that, if there was any negligence of the defendant, it consisted in the negligence of the foreman, Hunt, when he was acting as a fellow-servant with the plaintiff in the same line of service. This is also a question of fact, with the evidence strongly tending to prove the contrary. The evidence tends to prove that Hunt was acting as foreman, representing the common master, and in that capacity gave specific orders to the plaintiff to perform the very act, which caused the injury, and, as the case is presented here, we must of course so assume." This language is precisely applicable to the present case. Whether or not the negligence of the present appellant consisted in the negligence of the foreman, Hoff, when he was acting as a fellow-servant, was a question of fact to be determined by the jury, and has been settled by the judgments of the lower courts so far as we are concerned. (See also *Martin* v. *Chicago and Northwestern Railway Co.* 194 Ill. 138).

In *Chicago Hair Co.* v. *Mueller*, 203 Ill. 558, it was held that an assistant foreman, such as Hoff is claimed to have been in the present case, who is sometimes engaged in labor as a common workman with other servants, is not necessarily and as matter of law, their fellow-servant; and we there said (p. 562): "The evidence showed that Hermes held the position of assistant foreman to the appellant company; that he hired and discharged employes; that he gave orders to appellee and other employes, and the evidence tended to show that on the day in question he had charge and control of the work of

getting the bales out of the warehouse, and that he occu-
pied a position of superiority to appellee and the other
workmen.   The mere fact, that Hermes engaged in some
labor as a common workman, did not, as a matter of law,
make him any the less a vice-principal.   *   *   *   It was
a question of fact whether he sustained the relation of
fellow-servant to the appellee."

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*