## Chicago, Rock Island & Pacific Railway Company v. Joseph Rathneau.

### Gen. No. 12,286.

1. VICE-PRINCIPAL—*when co-employee is.* The test whether a co-employee is a vice-principal is not whether he had power to hire and discharge men under him but whether he had authority to take charge of and control the plaintiff and his co-laborers in the work in which they were engaged and to order and direct them; if he had such power then he was, in exercising the same, a vice-principal and his commands were in law the master's commands.

2. VICE-PRINCIPAL—*instruction as to, approved.* The following instruction upon this subject is approved:

"The court instructs the jury that where a master confers authority upon one of his employees to take charge and control of a certain class of workmen, in carrying on some particular branch of his business, such employee, in governing and directing the movements of the men under his charge with respect to that branch of the business is the direct representative of the master, and is not a mere fellow-servant, and all the commands given by him within the scope of his authority are, in law, the commands of the master, and if he is guilty of a negligent and unskillful exercise of his power and authority over the men under his charge, it is in law the same as though the master itself was guilty of such conduct."

3. FELLOW-SERVANT RULE—*when not error to fail to instruct.* It is not error for the court to fail to instruct the jury with respect to the law of fellow-servants where no such instruction was asked.

4. ASSUMED RISK—*when doctrine of, does not apply.* The doctrine of assumed risk does not apply where at the time of the accident the plaintiff was acting under the specific direction of his foreman, unless the danger to which he was exposed was so imminent that a man of ordinary prudence would not have incurred it.

5. ASSUMED RISK—*what essential to application of doctrine of.* The doctrine of assumed risk does not apply unless the servant appreciated both the risk and the danger arising from it.

6. MANNER OF CONDUCTING BUSINESS—*when evidence of, competent.* The environment and usual manner of conducting the business at the place of the injury is competent as shedding light on the acts and conduct of the parties.

Action on the case for personal injuries. Appeal from the Superior Court of Cook County; the Hon. JOSEPH E. GARY, Judge, presiding. Heard in this court at the March term, 1905. Affirmed. Opinion filed February 13, 1906.

BENJAMIN S. CABLE, for appellant.

JAMES C. McSHANE, for appellee.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

This is an appeal from a judgment in favor of appellee and against appellant for the sum of $12,500.

The declaration consists of one count, in which it is averred, in substance, that plaintiff, April 18, 1902, was employed by the defendant as a laborer, to work with a cer-

tain gang engaged in loading iron rails on a flat car, at Blue Island, and the defendant had a foreman in charge of plaintiff and said other laborers, engaged as aforesaid, whose orders it was their duty to obey and who was not plaintiff's fellow servant, but was a vice-principal of the defendant; and plaintiff and his co-laborers, by the direction of said foreman, placed two long iron rails with one end of each on the flat car and the other ends thereof on the ground, said rails to be used as skids in skidding rails from the ground onto the car and loading the car, and after said rails to be so used were so placed, said foreman negligently placed a stake in the side and at one end of said car, so high that it would strike and tip the rails, while being skidded from the ground onto the car, thereby rendering the work extraordinarily dangerous; and, while said stake was so placed, said foreman negligently ordered plaintiff and his co-laborers to skid said rails onto the car, and, while in obedience to said order, they were skidding a rail from the ground onto the car, and while plaintiff was exercising ordinary care for his safety, one end of the said rail came in contact with the stake and the rail was turned over, slid down the skid and caught and crushed so severely the plaintiff's ankles that they have become and are prematurely crippled and their usefulness permanently impaired, etc.

The defendant pleaded the general issue. The court overruled motions made at the close of the plaintiff's evidence and at the close of all the evidence, to take the case from the jury, the jury found the issues for the plaintiff, a motion for a new trial made by the defendant was overruled, and judgment was rendered on the verdict.

The accident occurred April 18, 1902, about nine o'clock in the morning, and on the ninth day of plaintiff's employment with the defendant. Plaintiff, with five or six other men, was engaged in loading iron rails onto a common flat car, about 34 feet in length. At the time of the accident Peter O'Rourke was foreman over the men. The plaintiff had not, prior to the day of the accident, assisted in loading iron rails onto a car. The car onto which the rails were

being loaded stood north and south. The rails were old
ones, which had been taken up from a track, and weighed
from 9 to 11 pounds per foot, some of them being thirty
feet long and others shorter, and they were piled on the
ground a short distance west of the car, and were loaded
onto the car from its west side. There were two long per-
pendicular stakes driven into holes or pockets on the east
side of the car, to keep the rails in when loaded onto it
from the west side, and there were two men on the car to
receive and pile the rails when they came onto the car. Two.
greased rails were placed about seven feet apart about the
middle part of the west side of the car, their upper ends
resting on the side of the car, or on rails at that side, and
their lower ends on the ground a short distance from the
pile of rails to be loaded. These rails were used as skids
on which to shove the rails onto the car. The farther or
east side of the car was first loaded to the required height,
the loading gradually approaching the west side of the car,
and when the loading reached to within a short distance
from the west side of the car, it became necessary to drive
two short stakes into the pockets on the west side of the car
to prevent the rail or rails then placed under the upper ends
of the skids from being crowded off the car by the rails al-
ready loaded. The object of placing rails under the skids
on the west side of the car, was to elevate them so that the
rails, when shoved up the skids, would clear the short stakes
and fall onto the car. The flat part of a rail when being
shoved up was next to the skids. The rails were shoved up
by the men, by means of round sticks about one and three-
quarters inch in diameter, with a block end. There was
danger that if a rail being shoved up should come in contact
with anything and turn over, the men shoving it would lose
their hold on it by their sticks being thrown out of place,
and that it would slide down the skids. O'Rourke, the fore-
man, put in the stakes on the west side of the car, and the
evidence is that he knew that the south stake was longer than
the north one, and was too long. Kneibert, one of the men
on the car, testified that he told O'Rourke that the south

stake was too high.    Wilbur, the other man on the car, testi-
fied that he heard Kneibert so tell O'Rourke.    O'Rourke,
himself, testified, in substance, that he knew the stake was
too high.    On cross-examination he testified that the south
stake was the shortest there, that he tried to drive it down,
but could not; that it might have been knocked out and
trimmed so as to go down far enough had he had an axe, but
he had none, and the nearest place to get one was the store
house about half a block away from the car.    When Kneibert
told him the stake was too high, he called out to the men
engaged in loading the car, "All right; go on boys, shove up
the rails."

The plaintiff, in assisting to shove up a long rail, was be-
tween the skids; the other men so engaged being, some north
and some south of him, and the greater weight of the evi-
dence is, as we think, that the rail collided with the south
stake, was turned over, so that the men lost their hold on it
with their sticks, and it slid down the skids.    The pile of
iron on the ground was behind the plaintiff, and when the
rail slid down, it struck against his legs close above his
ankles, and permanently disabled him, so that he cannot
walk with his left foot at all, or with his right one without
great pain and has to use a crutch and cane.    He was about
forty years old at the time of the accident.    There is a
conflict in the evidence as to whether the rail which injured
plaintiff was the first rail shoved up after the stakes were
placed on the west side of the car, but the uncontradicted
evidence is that it was the first long rail shoved up after
said stakes were placed.

Counsel for defendant objects that the verdict is not sus-
tained by the evidence, and says, apparently as ground for
the objection, that there is no evidence fairly tending to
prove that O'Rourke was a vice-principal.    The uncontra-
dicted evidence is that O'Rourke was foreman of the gang
of men engaged in loading the car.    Some of plaintiff's wit-
nesses call him the foreman, others their boss.    O'Rourke,
himself, called by defendant, did not deny that he was fore-
man, and Clancy, also witness for defendant, called

O'Rourke the foreman, saying: "The foreman put the stakes in." Counsel say there was no proof that O'Rourke was authorized to hire or discharge the men. Plaintiff offered evidence tending to prove O'Rourke hired the men. During the examination of Wilbur he was asked, "Who hired you?" which question the court ruled against on the objection of defendant's attorney, and, therefore, the defendant cannot, as we think, be heard to contend here that the evidence was necessary or important. N. Chicago Electric Co. v. Peuser, 190 Ill., 65, 72. Even though the foreman had no power to hire or discharge the men, this did not necessarily render him other than a vice-principal. Frazer et al. v. Schroeder, 163 Ill., 459, 464. The test is not whether he had power to hire and discharge the men under him, but whether he had authority to take charge of and control plaintiff and his colaborers in the work in which they were engaged, and order and direct them. If he had such power, then he was, in exercising the power, a vice-principal, and his commands were, in law, the defendant's commands. Ib., citing Wenona Coal Co. v. Holmquist, 152 Ill., 581.

There is evidence tending to prove that any of the men engaged in the work might have placed the stakes on the west side of the car, and that some of them occasionally did so, but that the foreman, O'Rourke, most generally placed them, and did so on the occasion in question, and it is contended that in placing them he was acting as a fellow servant of the plaintiff. But, if this be conceded, it does not affect the question whether, in giving the order to the men to shove up the rails, he was acting in the capacity of foreman, and in the exercise of the power to order and control them conferred on him by the defendant. If he was so acting, then it is immaterial, so far as his order is concerned, if he acted as fellow servant of the men in placing the stakes. Met. W. Side El. R'd Co. v. Skola, 183 Ill., 454; Consolidated Coal Co. v. Gruber, 188 ib. 584; Graver Tank Co. v. O'Donnell, 191 ib., 236, 240, citing a number of cases; Ill. S. Ry. Co. v. Marshall, 210 Ill., 562.

In the case last cited the plaintiff's intestate was struck by one of certain "leads," which were large timbers about 38 feet long, while the same were being lowered, and received injuries resulting in his death. There was on the lead a yoke-iron, to which, in lowering the lead, it was necessary to attach a rope to steady the lead while being lowered. Hoff was foreman of the plaintiff and his fellow laborers, and it was his duty to attach the rope to the yoke-iron, but he ordered the men to lower the leads' before the rope was so attached. The court say: "The theory of appellant seems to be that the injury resulted from the failure of Hoff to attach the rope to the yoke-iron, and that, in performing or failing to perform such duty, he was acting as a fellow-servant with Marshall. While it may be true that the injury resulted to some extent from the failure to attach the rope to the iron yoke, yet it is also true that the injury resulted from the order of Hoff, as foreman or vice-principal, to lower the leads, and, as preliminary thereto, to remove the props from under the leads. The duty to attach the rope to the iron yoke was preliminary to giving the order to lower the leads, and he should not have given that order unless the rope was properly attached, because, without a proper attachment of the rope, the leads would fall and injure persons upon the car. If as fellow-servant he neglected his duty in not attaching the rope, as foreman having control of the men he was guilty of negligence in ordering the leads to be lowered before the rope was properly attached. In giving this order as foreman or vice-principal, he was representing the appellant, and the appellant is certainly responsible under the decisions of this court for his negligence."

In the present case it was a question for the jury to determine from the evidence in what character O'Rourke gave the order to the men. M. &. O. R. R. Co. v. Massey, 152 Ill., 144; Mobile & O. R. R. Co., v. Godfrey, 155 ib., 78; C. &. E. I. R. R. Co. v. Driscoll, 207 ib., 9; Wenona Coal Co. v. Holmquist, 152 Ill., 581, 590.

We think the jury was fully warranted by the evidence in finding that O'Rourke, in giving the order, acted as fore-

man and vice-principal. Defendant must be charged with O'Rourke's knowledge that the south stake was too high when he gave the order to the men to shove up the rails, just as the defendant in Ill. S. Ry. Co. v. Marshall, *supra,* was chargeable with the knowledge that the rope was not attached to the yoke-iron when he gave the order to lower the leads. It was a question for the jury whether O'Rourke's order was negligence which caused the accident. Counsel complains that the court did not instruct the jury as to the law in respect to fellow servants. No such instruction was asked by counsel, and, therefore, he is not in a position to complain that none was given. Provident Hospital & T. School v. Barbour, 58 Ill. App., 421; Thode v. Brewing Co., 69 ib., 403; City of Chicago v. Hogan, 80 ib., 344; Osgood v. Skinner, 111 ib., 606, 619; Ill. Cen. R. R. Co. v. Atwell, 198 ib., 200, 204; McDonald v. The People, 93 ib., 93, 98.

Counsel say that plaintiff saw the stakes placed, which is true, as plaintiff testified. But counsel further say that "the danger was as open and plain to plaintiff as to O'Rourke himself." With this statement we are not inclined to agree. O'Rourke had been working for defendant for over twenty years, and had experience in loading rails onto cars in the manner in which the car in question was loaded. He knew that the stakes should be of such height that the rails, when shoved up, should clear them, and that the south stake was too high; and must have known that, if a rail should be turned over by coming in contact with the stake, the men would lose their hold of it, and it would slide down the skids. The plaintiff's first experience in loading rails onto a car as those in question were loaded, was on the day of the accident; he was a learner, and had a right to assume that his foreman placed the stakes properly, especially when the order was given him to shove up the rails. "At the time of the accident he was acting under the specific directions of his foreman, and he was not required by law to disobey him, or by obeying assume the hazard of obedience, unless the danger to which he was exposed was so imminent that a man

of ordinary prudence would not have incurred the risk." Graver Tank Works v. O'Donnell, 191 Ill., 236, 239.

As plaintiff had not before the day of the accident been engaged in similar work, it is at least probable that he did not appreciate the danger of the stake being too high, and if he did not, he did not assume the risk.   In Offutt v. World's Columbian Exposition, 175 Ill., 472, the plaintiff's foreman, one Hunt, directed him to place a rope, from which a hanging scaffold was to be suspended, in a certain way. "Plaintiff objected and told Hunt that the hook was not big enough for that purpose, and that the strap, being brand new, was liable to come down.   Hunt replied that it would not come down, and repeated his orders, and Offutt obeyed and fastened the strap as directed."   Offutt was a painter "and thoroughly understood the hanging of ladders and the putting up of scaffolds."   Held, that it was a question of fact for the jury, whether the danger was of such character that a man of ordinary prudence would not, knowingly, have incurred it, and whether the plaintiff knowingly incurred it.

In this case the court, by defendant's request, gave to the jury this instruction:

"The jury are instructed that a servant assumes all risks of his employment that are open and plain to his sight and obvious to the sense of any reasonable person, and if you believe from the evidence that the plaintiff was injured by reason of such plain and open risks and dangers obvious to the sense of any reasonable person, then the plaintiff is not entitled to recover in this action, and your verdict should be for the defendant."

Mislich, witness for plaintiff, was questioned and answered as follows:   Q. "During the time you worked there did you ever know of a stake being high enough to strike the rail before?"   A. "No."   Counsel for defendant objected to the question and saved an exception to the overruling of the objection, and contends that the ruling was error, citing C. R. I. & P. Ry. Co. v. Clark, 113 Ill., 113.   The court, ib. p. 18, said of the instruction:   "We therefore think that such evidence did not tend to prove care on the part of the

deceased, and the court erred in its admission." The evidence referred to was proof of the usual mode of coupling and uncoupling cars of the defendant at times prior to the accident. There were other instructions in the case, which were clearly erroneous and highly prejudicial to the defendant, which, therefore, manifestly required a reversal, and it does not appear that the judgment would have been reversed on account of the first above mentioned instruction.

In the cross-examination of Clancy, defendant's witness, he testified, without objection: "They usually used a short stake, or a stake short enough to permit the rail to be skidded right over it."

In St. Louis Nat. Stock Yards 'Co. v. Godfrey, 198 Ill., 289, the plaintiff, Godfrey, a locomotive engineer, whose duty it was to operate and run a certain switching engine, in hauling freight cars into and out of the defendant's yards, was injured in the yards by a collision between the engine he was operating and an engine of the defendant, which collision was alleged to have occurred by the defendant's negligence. The plaintiff introduced evidence of the defendant's usual manner of conducting its business, which the defendant contended was improper, in respect to which the court, p. 294, say: "Evidence was admitted by the trial court with reference to the location of certain buildings, tracks and cars, and with reference to the usual manner of conducting the business of appellant and others in appellant's yards. All this was competent evidence in the case. The environment and usual manner of conducting the business involved at the place of the injury is competent as shedding light on the acts and conduct of the parties." We do not think the admission of the evidence is reversible error.

Counsel devotes a great part of his argument to the contention that the following instruction, which is the only one given for the plaintiff, is erroneous:

"The court instructs the jury that where a master confers authority upon one of his employees to take charge and control a certain class of workmen, in carrying on some particular branch of his business, such employee, in governing

and directing the movements of the men under his charge with respect to that branch of the business is the direct representative of the master, and is not a mere fellow servant; and all the commands given by him within the scope of his authority are, in law, the commands of the master, and if he is guilty of a negligent and unskillful exercise of his power and authority over the men under his charge, it is in law the same as though the master itself was guilty of such conduct."

The instruction is exactly the same as one given in Illinois Steel Co. v. Hanson, 97 Ill. App., 469, 471, in which the judgment of this court was affirmed by the Supreme Court in Same v. Same, 195 Ill., 106.    The main objection of counsel to the instruction seems to be, that the defendant's contention being that O'Rourke was a fellow servant of the plaintiff in placing the stake, the court should have supplemented the instruction by an instruction of its own, in regard to the fellow servant doctrine, in so far as applicable to the facts in evidence.    We have already shown that the law did not require the court so to do.    The instruction is manifestly correct.    Wenona Coal Co. v. Holmquist, 152 Ill., 581, 590, cited with approval in Fraser et al. v. Schroeder, 163 ib., 459, 464.

It is assigned as error that the damages are excessive, but this assignment is not relied on in the argument, and, therefore, must be deemed waived.

The judgment will be affirmed.

*Affirmed.*