CHICAGO—FIRST DISTRICT—A. D. 1907. 515

Chicago Term. Trans. R. R. Co. v. Reddick.

## Chicago Terminal Transfer Railroad Company v. James H. Reddick, Administrator.

### Gen. No. 12,949.

1. CONTRIBUTORY NEGLIGENCE—*presumption of law against.* Where the fact is not susceptible of direct proof, the presumption of law is that a person did not voluntarily incur the danger or the risk of death.

2. FELLOW-SERVANT—*when foreman not.* A foreman is not a fellow-servant where he is exercising the authority conferred upon him by his master and is performing a duty which is peculiarly that of the master.

3. INSTRUCTION—*as to intention not to intimate facts, approved.* An instruction is proper which tells the jury that the court does not intend to intimate what its opinion is as to any fact or facts in dispute.

Action in case for death caused by alleged wrongful act. Appeal from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1906. Affirmed. Opinion filed February 19, 1907.

**Statement by the Court.** This is an action by appellee to recover for personal injuries causing the death of John Russler. There was a verdict in favor of appellee and judgment accordingly, from which comes this appeal.

The accident occurred about three o'clock in the morning of October 30, 1903. The deceased was a member of a switching crew in the employ of defendant. This crew consisted of a foreman named Kennedy, one Hetzelberger and the deceased as switchmen, and an engineer and fireman operating the engine. A short time before the accident, the foreman Kennedy was in the office of the yardmaster of the defendant's railroad yard situated near Robey and West 14th streets, Chicago. At the same time one Doyle, foreman of another crew, was present and was ordered in Kennedy's presence to go to the west end of the yard and "pull track No. 7." At the same time Ken-

516    APPELLATE COURTS OF ILLINOIS.

VOL. 131.]    Chicago Term. Trans. R. R. Co. v. Reddick.

nedy was directed to go to the east end of the yard to place certain cars on that track. This track No. 7 held some seventeen or eighteen cars, and was full at that time. Kennedy with his crew proceeded accordingly to the east of that track and Doyle to the west. It was the purpose of Kennedy and his crew to place upon track 7 several cars which were at the west end of a train of 23 or 24 cars standing on track No. 2. To do this the train on track 2 was attached to the engine, and when in the proper place for the purpose Kennedy told the deceased to cut off the west four or five cars, whatever the number may have been, which were to be put upon track 7. Deceased got on the train at the point where the cut off was to be made, and Kennedy signalled to the engineer to back the train westward.

In the meantime Doyle's crew coupled up from the west to all but one of the cars on track 7 and pulled them off to the westward, leaving but the one car standing on that track 7. While Hetzelberger, the rear switchman of Kennedy's crew, was arranging the switches for his train then approaching, he saw Doyle's switching train starting west with cars taken from track 7, and saw that one car was left standing on that track. In order to prevent a severe collision with this car by the cars which his own crew were backing down from the east, he shouted and ran east with the purpose of signalling Kennedy to stop or slow up his train, which had been signalled to back up rapidly. Before he could give a signal to Kennedy the first of the cars backing up, which were to be "kicked" off, reached and passed him and he discovered that a signal to slow down had already been given, that the rest of the train was slowing down, and that the cars to be "kicked" off on to track 7 had been uncoupled by the deceased and were going on at a greater rate of speed, having already left a space of from ten to fifteen feet or more between them and the part of the train attached to the engine. These detached cars running westward struck the single car standing on track 7

with considerable force; and as the collision occurred, the lantern carried by the deceased was seen to fall from the east end of the detached cars, followed by the deceased himself, who fell upon the track and was run over by the part of the train attached to the engine, which was following at a continuously diminishing rate of speed behind the cars so detached and "kicked" off.

At the conclusion of the plaintiff's evidence appellant requested the court to peremptorily instruct the jury to find the defendant not guilty. The motion was denied. No evidence was introduced by appellant.

JESSE B. BARTON, for appellant.

JAMES C. McSHANE, for appellee.

MR. PRESIDING JUSTICE FREEMAN delivered the opinion of the court.

It is contended in behalf of appellant that the deceased was guilty of contributory negligence, that there is no proof that he was injured in consequence of the collision of the cars upon which he was working with the car standing on track 7, that there is no evidence that the foreman of the crew to which the deceased belonged was negligent, that the foreman was not a vice-principal but a fellow-servant with the deceased, and that the court erred in instructing the jury as to the law relating to vice-principals.

We find no evidence fairly tending to show contributory negligence on the part of the deceased. The night was dark. No one saw him when he uncoupled the cars upon one of which he was riding when he fell, and we discover no evidence of negligent conduct on his part. It was his duty to uncouple and then to hold the lever until, the stop signal being given by the foreman, the detached cars by the momentum they had acquired should move ahead, separating themselves from the rest of the train which was gradually slowing down

518     APPELLATE COURTS OF ILLINOIS.

VOL. 131.]    Chicago Term. Trans. R. R. Co. v. Reddick.

behind them. What position he occupied upon the car
while this was going on does not appear except from
the fact that he fell on the rail between the two sec-
tions of the moving train. There is evidence tending
to show that the usual position taken under such cir-
cumstances was to ride with the body half way in and
half way out from between the cars, and that such was
the safest way to avoid being hit by outside objects,
cars on other tracks, etc. It appears that if he rode
with his body extending outside of the space between
the two cars, there might have been danger of his being
injured by cars standing near points of intersection,
where switch tracks connected with the track on which
his train was moving. It appears that it was his duty
to remain where he could raise and hold up the lever
of the automatic coupler until the cars separated.
Under these circumstances it is impossible to say from
the evidence that he was guilty of negligence in riding
between or half way between the cars, rather than on
the outside of one of them. So far as the evidence
goes, it tends to show that proper performance of his
duty required his being where he seems to have been
when he fell. The presumption of law must be where
the fact is not susceptible of direct proof that a person
"does not voluntarily incur danger or the risk of
death," and that in view of the known conditions he
was exercising due care for his own safety. C. & E.
R. R. Co. v. Heerey, 203 Ill. 492-499.

As to whether the deceased fell by reason of the
collision of the cars upon which he was riding with the
car left standing on track 7, we are unable to concur
in appellant's contention that there is no proof which
justifies the jury in so finding. The witness Hetzel-
berger testifies that the night was dark, that he did
not see the deceased on the train at all until he "saw,
his lamp fall and then I saw him fall," and that it was
when the detached cars hit the standing car on track
7 that he "heard the lamp drop and then I saw him
lying there and then the cars came along and ran over

him." From the evidence we think the jury were jus-
tified in concluding (a) that the deceased was riding
on the rear end of the last of the cars he had detached
when the collision with the loaded standing car oc-
curred; (b) that the cars collided with force such that
the detached cars carried the standing car with them
in a body a considerable distance—"five or six car
lengths," it is said—to the westward; and (c) that the
force with which the collision occurred was responsi-
ble for the fall of the deceased.

It is said that it does not appear from the evidence
that the foreman Kennedy was negligent. The negli-
gence charged is that he was running his train at a
high rate of speed, when he knew or should have
known in the exercise of due care that it would collide
with a car standing on track 7. It is argued by appel-
lant's attorneys that it does not appear that if the fore-
man had known the exact conditions as to the presence
of a car left standing on the track, he would have sig-
nalled the engineer to proceed at any different rate of
speed than he did, or that this was faster than the cus-
tomary rate under such conditions, it being necessary
to have speed sufficient to throw the cut on track 7,
whether there were cars there or not; that there is no
evidence "that the movement was any too fast for a
proper handling of the cut as it was intended to handle
it." Nevertheless we are of opinion that whether
the manner of doing it was or was not negligent in view
of all the circumstances was a question of fact for the
jury, and we cannot say in view of all the evidence
that their finding was incorrect in this respect. Hetzel-
berger testifies that though the cars were not going
very fast, the speed was yet "too fast for that kind of
switch if they knew the car was there," and on his
direct examination the foreman said he would not have
had the engineer go so fast had he known that a car
was standing on track 7.

It is insisted that the foreman was a fellow-servant
of the deceased and not a vice-principal, and hence the

520    APPELLATE COURTS OF ILLINOIS.

VOL. 131.]    Chicago Term. Trans. R. R. Co. v. Reddick.

doctrine of *respondeat superior* is inapplicable. It appears that the foreman of this train crew had nothing to do with employing or discharging the other members. It is apparent, however, that the authority he exercised in directing the movements of the train crew and of the train, by signal and otherwise, was conferred upon him by virtue of his position and was, as the jury seem to have found, in fact as well as in law the authority of the master. "When the negligent act complained of arises out of and is the direct result of the exercise of the authority conferred upon him by the master over his co-laborers, the master will be liable. In such a case he is not a fellow-servant of those under his charge with respect to such power, for no one but himself in the case supposed is clothed with authority to command the others." And it is further said that "in exercising this power he does not stand upon the same plane with those under his control." C. & A. R. R. Co. v. May, 108 Ill. 288-299. See also Ill. S. Ry. Co. v. Marshall, 210 Ill. 562-573; Baier v. Selke, 211 Ill. 512-516. The testimony of Kennedy himself was that as foreman or conductor of the train crew "the members of the crew are subject to our orders as to what they do and what they shall not do. I regulate the movement of my engine and its speed;" that he was "in charge of the work and the manner in which it was done and wouldn't see the yardmaster very often unless we went back to Robey street." This evidence certainly tends to show that the foreman was not acting as a fellow-servant of the deceased, that he had and exercised the authority of the master in carrying on the particular work which the train crew were doing, and we are of opinion that it justifies the jury in so finding as a matter of fact. See Ill. Cent. R. Co. v. Atwell, 198 Ill. 200-203; C. & E. R. R. Co. v. Driscoll, 207 Ill. 9-15; M. O. M. I. Co. v. Dillon, 206 Ill. 145-155; Marshall v. Ill. S. Ry. Co., *supra*.

It is said the court erred in instructing the jury as requested by plaintiff regarding the law of vice-

principal, especially as applied to the case at bar. The first part of the instruction complained of may be found *verbatim* in Ill. Steel Co. v. Hanson, 97 Ill. App. 469-471, in which case it was approved. In the case at bar the jury were further told in effect that the court did not by that or any other instruction intend to intimate whether the defendant had in fact conferred authority to take charge of and control the train crew or whether Kennedy, the foreman, was or was not a fellow-servant or was or was not guilty of negligence, etc. The instruction states the law with substantial accuracy, in our opinion, and we find nothing materially objectionable in its statement or purport.

In the absence of material error in the record, the judgment of the Superior Court must be affirmed.

*Affirmed.*