CHICAGO AND EASTERN ILLINOIS RAILROAD COMPANY

*v.*

CLARA C. DRISCOLL, Admx.

*Opinion filed October 24, 1898—Rehearing denied December 20, 1898.*

1. RAILROADS—*railroad company not required to adopt any particular method of construction.* The manner of constructing a railroad is an engineering question, and a railroad company is not required to adopt any particular method of construction, nor any particular contrivance or device, in order to be in the exercise of ordinary care for the safety of its employees.

2. SAME—*whether absence of butt-post from stub-switch is negligence is not for the jury.* Whether the failure to place a butt-post at the end of a stub-switch constitutes negligence in the construction of the track is not a question for submission to a jury, the only proper question being whether the premises were reasonably safe.

3. EVIDENCE—*evidence as to how other railroads are constructed is inadmissible.* In an action charging a railroad company with negligence in failing to place a butt-post at the end of a stub-switch, evidence that other railroads use butt-posts is inadmissible.

4. FELLOW-SERVANTS—*the question of existence of relation of fellow-servants may become one of law.* Though ordinarily a question of fact, the existence of the relation of fellow-servants becomes a question of law where the facts conceded or beyond dispute show that the relation exists. (MAGRUDER, J., dissenting.)

5. SAME—*yard crews are fellow-servants.* Yard crews employed to perform the same character of service at the same time, using the same tracks with equal frequency and constantly working near each other, are fellow-servants, though under different foremen.

6. PLEADING—*alleging negligence by particular servant limits recovery to such act.* Alleging that defendant's liability arises from the negligence of a named servant of defendant in doing or omitting a certain act, limits the plaintiff's right of recovery to proof of the negligence alleged, and he cannot recover, upon such allegation, for general negligence or negligence of any other servant than the one specifically named.

7. NOTICE—*when proof of notice of defect is essential to a recovery for death of switchman.* Where the rear man of a switching crew, whose duty is to see that cars are coupled and ready for starting, fails to observe that the rear car on a stub-switch is off the track, there being no butt-post at the end, and is killed when the cars are started, his administratrix cannot recover without proof of notice by the company, actual or constructive, of the condition of the car.

*Chicago and E. I. R. R. Co.* v. *Driscoll,* 70 Ill. App. 91, reversed.

Appeal from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. Frank Baker, Judge, presiding.

Will H. Lyford, William J. Calhoun, and Albert M. Cross, for appellant.

James C. McShane, for appellee.

Mr. Justice Phillips delivered the opinion of the court:

This is an appeal from a judgment of affirmance by the Appellate Court for the First District of a judgment for $5000, rendered by the circuit court of Cook county against appellant and in favor of appellee, for causing the death of her husband.

The declaration charges that the defendant negligently maintained in its freight yard a certain track without any butt-post or other obstruction at the end thereof, and because of such absence a car had been run off the track onto the ground before the accident, by a crew with which Driscoll, the deceased, had no connection; that the switching crew of which the deceased was a member coupled its engine to a train on this track, of which train this car was a part, and in moving the train the car, because of being off the track, was thrown against a standing train on an adjoining track, and Driscoll was caught between the moving and standing trains and killed.   Other counts of the declaration charge that defendant had in its employ an assistant night yard-master, not a fellow-servant of the deceased, who knew, or by the exercise of ordinary care might have known, this car was off the track, and knew, or might have known, that the deceased and his crew were ignorant thereof, but he negligently ordered Driscoll and his crew to attach their engine to and move the train without notifying the crew of the position of this car, whereby Driscoll was caught

in a collision between a car off the track and a train on an adjoining track and killed. Another count alleges that a switching crew with which Driscoll was not connected was guilty of negligence in pushing this car off the track, etc.

Two switching crews were employed in the same switch yard, and both handled this train which caused the accident within a few minutes of its occurrence. One was known as Hurd's crew and the other as Ward's crew. Driscoll had been a member of both crews, and was familiar with their work and the yard and tracks, but at this time was working with Ward's crew. Three of the tracks were used as repair tracks and were stub-tracks, at the ends of which no butt-posts had ever been erected, but were left open, so that if a car was pushed too far it would run off onto the ground. It was the duty of Hurd's crew to switch cars on these repair tracks and remove cars therefrom, and to also transfer cars to other switch yards. Ward's crew also switched cars onto and removed cars from these repair tracks and made up and broke up trains. Both crews were at work in the yard breaking up and making up freight trains, switching and removing cars, using the repair and yard tracks with equal frequency, often on the same track, constantly working near each other with duties of the same character. Within the limits of the yard the duties of the two crews were identical and performed at the same time. Each crew consisted of five men,—an engineer, a fireman, a foreman and two helpers. One member had the duty of making couplings in the front part of the train, opening switches ahead of the engine, and repeating to the engineer signals from the rear. It was the duty of another member of the crew to act as rear man. His duties were to go to the rear end of the train on a repair track to see that all cars were properly coupled and the train in proper condition to be moved, to give signals from the rear and close switches behind the train. These duties were performed

by the foreman and helpers indiscriminately. Driscoll had frequently acted as rear man, and was performing those duties on the evening of the accident. There is no dispute about these facts, and they appear from plaintiff's evidence and are uncontroverted. On the evening of the accident Hurd's crew pushed all the cars together on the track on which the accident occurred, coupled them together and left them standing with the rear wheels of the rear car about ten inches from the end of the rails and on the track. His crew then pulled the cars from two other stub-tracks, backed them onto the track where the accident occurred and coupled the train of cars, and left it and saw it no more until after the accident. There is no evidence in this record that Hurd's crew, in making up this train, pushed the car off the track. Ward's crew were ordered to take this train from the track from where it was so made up and distribute it, but the time between the departure of Hurd's crew and the arrival of Ward's crew is not shown. After coupling onto this train and attempting to pull out the accident occurred as alleged. When and how this car became thus partially off the track from this record is unknown.

To meet the evidence of plaintiff that no butt-post was placed at the end of the stub-track on which the accident happened, the defense introduced evidence that when butt-posts were placed at the ends of the tracks it frequently happened that a train would back in at considerable speed, and the momentum of a heavy train moving rapidly would, upon impact with the post, wreck cars of the train, but that without such posts switching crews would have to stop the train, and would be more watchful than if reliance would be placed on a butt-post. Plaintiff introduced eight witnesses, who, over the objection of the defendant, were permitted to testify as to the number of years they had been in railroad service, and that they were familiar with the manner in which stub-tracks were constructed, with reference to obstruc-

tions placed at the ends of such tracks, by reputedly well-regulated roads in Chicago. Each of these witnesses was then asked how stub-tracks were constructed by railroad companies in this particular, and to this question, when put to each witness, defendant objected, its objection was overruled and an exception was taken. Each witness then answered that obstructions of some sort were usually placed at the ends of stub-tracks. At the close of the evidence for plaintiff and at the close of the entire testimony the defendant asked instructions to find for the defendant, which were refused, to which the defendant excepted.

From these facts these questions are presented: First, whether a failure to put a butt-post at the end of a stub-switch in a switch yard is such a showing of negligence in the construction of the track as should be submitted to a jury; second, whether it was error to admit evidence that other roads were constructed with butt-posts at the ends of such stub-tracks; third, whether members of two switching crews working in the same yard are fellow-servants; fourth, whether, under the evidence, appellant is liable for the alleged negligence of Hurd's crew, or of Blake, the assistant night yard-master.

With reference to the first proposition, it may be said that the manner of constructing a railroad is an engineering question. A railroad company cannot be required to adopt any particular method of construction, or any particular contrivance or device, in order to be in the exercise of ordinary care. Public policy does not require courts to lay down any rule as to the manner of construction of railroads. The hazardous character of the business of operating a railroad, and the danger to life, body and limb of employees thereon, may well call for specific legislation having for its object the protection of the person of the employee and of the traveling public, and yet it is not a question for a court to submit to a jury whether the manner of construction of a railroad

is proper or not. A verdict is not a precedent, and is not binding on another jury. One jury might find the construction a proper one whilst another jury might find it an improper one, and the important engineering question of the manner of constructing a railroad would thus be left to the varying and uncertain opinions of jurors. The only question proper to submit to a jury in such cases is, whether the premises as they existed at the time of the injury were reasonably safe. (*Twitchell* v. *Grand Trunk Railway Co.* 39 Fed. Rep. 419; *Chicago, Rock Island and Pacific Railroad Co.* v. *Lonergan*, 118 Ill. 41; *Mc-Ginnis* v. *Canada Southern Bridge Co.* 49 Mich. 466; *Hewitt* v. *Flint and Pere Marquette Railway Co.* 67 id. 61; *Tuttle* v. *Milwaukee Railway Co.* 122 U. S. 189; *Chicago and Great. Western Railway Co.* v. *Armstrong*, 62 Ill. App. 228.) There could be no recovery for a failure to have a butt-post or other obstruction at the end of the stub-track.

For the above reasons it was also error to admit evidence that other roads had in their switch yards butt-posts or other obstructions at the ends of stub-tracks.

The next question presented is, whether the two switching crews are fellow-servants of each other. In *Wabash Railway Co.* v. *Brown*, 152 Ill. 484, we held, in substance, that where the evidence is conclusive and uncontradicted, and reasonable minds must reach the same conclusion on the facts, then negligence would become a question of law. On the same principle, whilst, as a general rule, the question as to whether the relation of fellow-servants exists is one of fact, yet where the facts are conceded, or where there is no dispute whatever as to the facts, and they show, beyond question, that the relation of fellow-servants exists, then the question may become one of law. (*Wabash Railway Co.* v. *Brown, supra; O'Leary* v. *Wabash Railway Co.* 52 Ill. App. 641; *Elgin, Joliet and Eastern Railway Co.* v. *Malaney*, 59 id. 114; *Klees* v. *Chicago and Eastern Illinois Railroad Co.* 68 id. 244.) In this case, as regards the performance of the duties of the

switching crews and the character of their work whilst in the yards, the service was almost identical, and shows beyond question the relation of fellow-servants existed.

.Under the counts charging negligence in failing .to have butt-posts or other obstructions placed at the end of the stub-track, and under the count charging another switching crew in the same yard with negligence, the peremptory instruction to find for the defendant should have been given.

The declaration charges that the assistant night yard-master was a vice-principal, and not a fellow-servant, with Driscoll; that he knew or should have known that the car was off the track; that he negligently gave an order to move the train without warning Driscoll and his crew of this danger. It is not alleged the defendant knew or did anything, but a named vice-principal is alleged to have done or omitted certain acts. Such an allegation limits liability to the alleged acts of the vice-principal so named. Under such a declaration the defendant would not be liable for a breach of a general duty which it owes a servant, nor for the negligence of some other agent whose negligence is not specifically alleged. The rule is fundamental that a plaintiff must recover, if at all, upon the case made by his declaration, and in the application of this rule to actions for negligence plaintiff cannot allege a specific act of negligence and recover upon proof of negligence of a different character. *North Chicago Street Railway Co.* v. *Cotton,* 140 Ill. 486; *Chicago, Burlington and Quincy Railroad Co.* v. *Bell,* 112 id. 360.

In *West Chicago Street Railroad Co.* v. *Martin,* 154 Ill. 523, the plaintiff, a passenger, was injured in a collision. No count in the declaration charged the defendant, generally, with negligence. Each count charged that a certain servant in charge of the car was negligent in failing to keep a lookout, and in failing to go ahead to the railway crossing and look for approaching trains. An instruction was given to the jury stating the presumption of negli-

gence which the law raises from the happening of an accident, and the consequent liability of the defendant unless it affirmatively disproved all negligence. It was held the instruction was improperly given, because plaintiff could not recover on any general theory of defendant's negligence, he having in his declaration limited the negligence charged to a particular one of defendant's servants. In this case, the allegation that Blake, the assistant night yard-master, knew, or in the exercise of ordinary care ought to have known, of the dangerous position of this car before the accident, must be shown by actual knowledge, or that the defect complained of had existed for such a length of time that Blake, in the exercise of ordinary care, should have discovered it. There is no proof of actual knowledge on his part, neither is there proof existing as to how long this car was actually off the track. Under the evidence in this record it is as fair to assume that it was pushed off the track when Ward's crew coupled on for the purpose of pulling out the train, as to assume that it was pushed back by Hurd's crew, the fellow-servants of Driscoll. Notice must be affirmatively shown.

In *Columbus, Chicago and Indiana Central Railway Co.* v. *Troesch,* 68 Ill. 545, it was said (p. 552): "The cases in this State and in sister States are with great unanimity to the effect, if injury arises from a defect or insufficiency in the machinery or implements furnished to the servant by the master, knowledge of the defect or insufficiency must be brought home to the master, or proof given he was ignorant of the same through his own negligence or want of care."

In *Sack* v. *Dolese,* 137 Ill. 129, a brake gave way, throwing plaintiff from the top of a car to the ground. The nature of the defect or how long it existed was not shown. It was held that the burden of proof was on the plaintiff to show affirmatively that the defect complained of had existed for such a length of time that the defend-

ant, in the exercise of ordinary care, should have discovered it, and the proof failing to show this affirmatively, plaintiff could not recover. There is no evidence in this record to show that Blake was charged with the duty of examining the rear end of the train to see whether a car was off the track, but the evidence does show that it was the duty of the rear man of the switching crew to see that the cars were all right.

In *Illinois Central Railroad Co.* v. *Jewell,* 46 Ill. 99, a brakeman was injured by reason of a defective brake, and it was held the defect did not show such negligence as to charge the company, for the condition of the brake was a matter under the special care of the brakeman, whose business it was at all times to see that it was in a fit condition for use and report defects to the company, and the company should not be made to suffer for his negligence of a plain duty.

In *Toledo, Wabash and Western Railway Co.* v. *Eddy,* 72 Ill. 138, a brakeman was injured by a defective ladder on the car, and it was said (p. 140): "It was the duty of appellee to see and know that the ladder was in repair, and if not, to have reported it to the proper person for repair. He had no right to act with recklessness in using machinery out of repair, and, if he received injury thereby, to hold the company responsible for the injury resulting from his carelessness or neglect of duty in not reporting it out of repair."

In *Chicago and Alton Railroad Co.* v. *Bragonier,* 119 Ill. 51, (a suit by a brakeman who was injured by reason of the defective condition of a brake,) it was alleged that the defendant knew, or by the exercise of a high degree of care might have known, of the existence of such defect in time to have repaired it. A series of instructions was given for the plaintiff, to the effect that if defendant, by the exercise of ordinary care, might have discovered the defect, and if the plaintiff, in the exercise of ordinary care, could not have discovered it, defendant was liable.

It was held error, for the reason that the duty devolved upon the brakeman to examine the brake, and if he found it defective, to report it.

In these last three cases it does not appear that the brakeman had any previous knowledge of the condition of the brake. The principle on which those cases were based was, that the duties of the brakeman brought him in connection with the brake, and the master could only become cognizant of a defective condition by a report made to him, and the proper person to so report was the brakeman. In this case the condition of the cars, and whether they were in a condition to be moved, could only be determined by an examination made by some employee. The employee designated to make such examination was the rear man of the switching crew,—the position filled by Driscoll at the time he was killed. No actual knowledge being shown to exist on the part of Blake, and no affirmative proof to show constructive or implied notice, plaintiff could not recover.

We hold that the instruction to find for the defendant under each count of the declaration should have been given, and it was error to refuse it.

The judgments of the Appellate Court for the First District and of the circuit court of Cook county are each reversed and the cause is remanded.

*Reversed and remanded.*

Mr. Justice Magruder: I do not agree with the conclusion reached by this opinion, nor with the reasoning by which it is sought to sustain such conclusion. That portion of the opinion which holds that the relation of master and servant is under any circumstances a question of law is opposed to many decisions made by this court. As is said in an opinion filed at the present term it is for the court to define the relation as matter of law, and then for the jury to find whether the particular facts come within the definition given by the court.