# Chicago, Wilmington & Vermilion Coal Company v. Eli Brooks.

1. MASTER AND SERVANT—*upon what latter may rely.* A servant has a right to rely upon the presumption that his master has exercised reasonable care in furnishing appliances and in providing a proper and reasonably safe place for him to work.

2. MASTER AND SERVANT—*what will preclude recovery by latter.* A servant is not to be permitted to recover if he knows of two ways of performing his work and ignores the safe and adopts the dangerous method.

3. NEGLIGENCE—*when charge of, not answered by contention that particular construction complained of was an engineering problem.* Held, that there was no merit in the contention that the switch stand complained of in this case fell within the rule that the manner of constructing a railroad is an engineering question and that a railroad company is not required to adopt any particular method of construction nor any particular contrivance or device in order to be in the exercise of ordinary care for the safety of its employes. .

4. EVIDENCE—*when incompetent as introducing collateral issue.* In an action for personal injuries, it is proper to refuse to admit evidence that no previous accident had occurred at the switch, the construction of which was complained of in the cause at issue.

Action in case for personal injuries. Appeal from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding. Heard in this court at the November term, 1906. Affirmed. Opinion filed November 22, 1907.

PATTON & PATTON, for appellant; GEORGE C. MASTIN, of counsel.

SHUTT, GRAHAM & GRAHAM and JAMES H. MURPHY, for appellee.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This appeal is prosecuted by the defendant to reverse a judgment in the sum of $5,000 entered against it by the Circuit Court in an action in case for the recovery of damages for personal injuries.

The declaration consisted of an original count and an additional count. The original count charges that the plaintiff was a driver in the employ of the defendant, in its coal mine; that it was the duty of the plaintiff, and he was directed by defendant, to place a car of coal on a track; that at such track was a switch lever and apparatus that was dangerously and improperly constructed; that while in the exercise of due care, the plaintiff was injured by reason of the dangerous and improper construction thereof. The additional count is the same, except that it charges that the lever was so broken and out of repair that it was dangerous, and in consequence of such condition the plaintiff was injured.

At the close of all the evidence, a motion for a peremptory instruction was made by the defendant, on the ground that the evidence failed to show that the plaintiff was directed to place the car on such track. The plaintiff then, by leave of court, amended both counts, by striking out the allegation as to a direction, leaving them with a simple allegation that it was the duty of appellee to place the car on such track. The defendant thereupon made a motion for a continuance, supported by affidavit, which was overruled upon the agreement by the plaintiff to admit a part of the matter set out in the affidavit. Exceptions were duly preserved. No further evidence was offered and the peremptory instruction was again asked and refused.

The evidence discloses the following facts: Appellant is the owner and operator of a coal mine at Thayer, Illinois. Appellee, who was forty-five years of age, had been in its employ for about five years prior to the date of the accident, part of the time as a coal digger, and the last three months as a night driver. As a night driver, it was his duty to move machines, clean up entry, and in general do such work as required the driving of a mule in the mine at night.

Shortly before he was injured, at about two o'clock

in the morning, appellee and two other employes, by direction of the "night boss," went to a point about 2,000 feet from the hoisting shaft and near where the right entry turned into the main shaft, to pick up and load some loose coal which was scattered in the main entry. They took with them an empty car, drawn by a mule in charge of appellee. Running through the main entry was a main track, upon which, at the junction with the third right entry, loaded cars were collected in trains and afterward hauled by an electric motor to the bottom of the hoisting shaft. At the junction of the main and third right entries was a side track, connected with the main track by a switch. After the cars were unloaded at the shaft, they were hauled in trains by the motor back into the mine, and, by a "flying switch," thrown in upon the side track, which was known as the "empty" track. The switch was equipped with a lever whereby it could be thrown so as to connect or disconnect the "empty" track with the main track. The switch in question differed from ordinary railroad switches, in that instead of having parallel switch rails which would move back and forth in response to the movements of the lever, they were equipped with two inside rails, known as "bridle" rails, four feet in length, which moved on pivots. The lever of an ordinary switch is so constructed that when the switch points are set for one track, the lever lies flat on the ground, and to change the points to the other track the lever must be lifted, carried around a semi-circle and dropped on the ground upon the opposite side. The lever here in question was so constructed that when the switch points were set for the right-hand or empty track, it lay flat on the ground, pointing to the track, and in order to change the points so that the motor would go on the left hand or load track, it was only necessary to lift the lever and bring it to a vertical or perpendicular position, moving it through half of a semi-circle. To let the empty cars run in on the empty track, the operator simply pushed

the lever down from its vertical position and, by its own weight and the force of the push, caused it to fall quickly down to its first position, opening the empty track. The boy who usually operated the switch was provided with a board having a notch cut in one end and with which he fastened the lever in the vertical position when he left at night, so that the switch would be open for the load track, by propping the end of the board against the rail and wedging the lever back in the notch in the other end. When the boy left his post for the last time preceding the accident, he fastened the lever back with the device supplied for that purpose, and left the switch set and open for the load track. After appellee and his companions had loaded the car, appellee concluded to take the loaded car into the third right entry, place it on the load track and get another empty car from the empty track. When the switch was reached, appellee stopped his mule, went forward and attempted to adjust the switch so that the car would run on the load track, by raising the lever to a vertical position. He then started the mule, and walked beside it, on the empty track. The jarring of the rails caused the lever to fall, thus effecting a connection with the empty track. As the car reached the frog, appellee's companions saw it was going on the empty instead of the load track, and immediately held back on the car and called out to appellee to warn him, but being hemmed in, he was unable to avoid the car as it approached, and as it came down the empty track, was caught between it and the end of an empty car standing west of the frog. His right leg was so crushed as to render it necessary to amputate it above the knee.

There was evidence tending to show that the unusual construction and mode of operating the switch were adopted in order that coal cars might be rapidly handled by the electric motor; that to make flying switches it was essential that the switch rails should be thrown in much less time than was possible by the

use of an ordinary switch. There is evidence tending to show further that appellee never before had occasion to use or adjust the switch in question and had no knowledge of its peculiar construction and mode of operation, although he had seen one of a similar character in another part of the mine, upon which a hook was used to hold the lever in an upright position.

It is urged as grounds for reversal that the maintenance of the switch apparatus as designed and constructed was not negligence; that appellant owed no duty to appellee with respect to the switch, because appellee was not in a place where his duty required him to be when he went into the third right entry; that appellee was guilty of contributory negligence in going into said entry and in his conduct when therein, and that the danger attending the use of the switch was an ordinary risk which he assumed by virtue of his employment. These questions of fact were, by instructions given at the request of counsel for appellant, all submitted to the jury for their determination, and there is ample evidence in the record to support the findings of the jury thereon adversely to appellant. There is evidence tending to show that the switch stand, as constructed, was an unsafe appliance, and out of repair; that the same rendered the place where appellee was injured an unsafe place to work, and further that appellee was unaware of the danger attendant upon the use of the same, and by the exercise of ordinary care and judgment could not have comprehended such danger.

It was obviously the duty of appellee to his employer to gather and remove the coal with reasonable diligence. If the jury believed from the evidence that appellee was reasonably warranted in the belief that, in order to remove the coal in the most expeditious and economical way, it was necessary to place the car upon the load track in the entry in question, and that the method followed by him in so doing would have been safe and proper under ordinary circum-

stances, they were warranted in finding that he was in the performance of a necessary duty at the time and place he was injured, although such course might not have been the only one open to him. If he was unaware of the dangerous condition and mode of operating the switch, he was manifestly not guilty of contributory negligence. He had the right to rely upon the presumption that appellant had exercised reasonable care in furnishing appliances and in providing a proper and reasonably safe place for him to work. If, in the absence of knowledge of the defective construction of the switch, he attempted to operate the same in the necessary and usual course of his employment, it cannot be said that he assumed the attendant risk.

Appellee was not directed to do the work in a specific manner, but was given a general order to perform the same and was left to exercise his own discretion. We agree with counsel for appellant that if there were two ways equally open to him, one of which he knew or should have known to be dangerous and the other to be safe, he selected the unsafe method through heedlessness or because it involved less exertion or his part, he could not recover for injuries received thereby. The evidence, however, does not establish such state of facts and the rule is inapplicable.

There is no merit in the contention that the switch stand in question falls within the rule that the manner of constructing a railroad is an engineering question and that a railroad company is not required to adopt any particular method of construction nor any particular contrivance or device in order to be in the exercise of ordinary care for the safety of its employes. C. & E. I. R. R. Co. v. Driscoll, 176 Ill. 330; I. C. R. R. Co. v. Campbell, 170 Ill. 163. Such rule is not applicable to devices or structures of the character here in question. C. & A. Ry. Co. v. Howell, 109 App. 546; M. & O. R. R. Co. v. Vallowe, 115 App. 621.

It is contended by appellant that the amendment of

the declaration substantially changed the character of
the proof necessary to be produced by appellee and
that it therefore had a right to have the cause con-
tinued so as to enable it to fully present its defense.
We do not think that appellant was prejudiced by the
refusal to grant the motion for a continuance. A num-
ber of the facts set up by the affidavit filed in support
of the motion were admitted by appellee. Such of
them as were not, were clearly in controversy under
the issues formed by the original declaration.

The trial court properly refused to admit evidence
that no previous accident had occurred at the switch.
M. & O. R. R. Co. v. Vallowe, 214 Ill. 124; Hodges v.
Bearse, 129 Ill. 87.

The evidence tending to show that the third right
entry was a convenient place to take the coal was
proper to be considered by the jury in determining
whether or not appellee was engaged in the line of
his duty when injured, and the court did not err in
admitting the same.

The rulings of the trial court upon the instructions
were not inharmonious with the foregoing views.

The judgment of the Circuit Court will be affirmed.

*Affirmed.*