NAAMAN SHOUKAIR, Appellee, *vs.* THE SARGENT COMPANY, Appellant.

*Opinion filed June 18, 1908—Rehearing denied October 8, 1908.*

1. TRIAL—*questions of. assumed risk and whether relation of fellow-servants exists are ordinarily ones of fact.* The questions whether the risk was assumed or the relation of fellow-servants exists in a particular case are ordinarily questions of fact, and become questions of law only when the facts are so established that there is no reasonable chance for reasonable minds to reach different conclusions.

2. SAME—*what proof authorizes the submission of case to jury.* Proof that plaintiff's eye was put out by the popping of hot metal from a mold as he was performing his duty in following the pouring kettle to see that the molds were filled; that the popping was due to defendant's failure to provide an escape for gases; that the plaintiff had been at the work but two months, during which time he had never known a popping to occur; that his instructions were meager but he had been directed to look "straight into" the molds, and that he had nothing to do with the preparation of the molds, justifies the submission of the case to the jury.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. LOCKWOOD HONORE, Judge, presiding.

F. J. CANTY, and J. C. M. CLOW, for appellant.

WILLIAM R. MOSS, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

Appellant is engaged in operating a foundry, and appellee, while in its employment, received an injury resulting in the loss of one of his eyes. Appellee claimed the injury was the result of the negligence of appellant and brought this suit to recover damages therefor. He recovered a judgment in the circuit court for $1800, which has been affirmed by the Appellate Court, and the case is brought here by appeal from the Appellate Court.

On the trial appellant offered no testimony and at the conclusion of appellee's evidence requested the court to direct a verdict in its favor, which was denied. The only contention of appellant here is that the trial court erred in not directing a verdict in its favor and the Appellate Court erred in not reversing the judgment for that reason.

The grounds upon which appellant claims it was entitled to have a verdict in its favor are, first, that appellee's injury resulted from an assumed risk; and second, that if appellee's injury was the result of negligence it was the negligence of a fellow-servant. Both these questions were submitted to the jury as questions of fact, under instructions of which no complaint is made.

The largest dimensions of appellant's foundry where the accident happened extended north and south. The furnace where the iron is melted for the making of castings is in the north end, and when the molds or flasks are prepared to receive the molten metal they are placed in rows, running north and south, on the foundry floor. We deem it unnecessary to enter into a minute description of the entire method of preparing the flasks. The castings that were being manufactured at the time appellee was injured had a hole in them about one and one-half inches in diameter. In order to make this hole, what is called a "core" was used. This was made of sand, flour and molasses and was set in the bottom half of the flask before the top half was placed on it, at the proper place to make the hole desired in the casting. The heating of the core when the molten metal was poured into the flask generated gases, which would cause an explosion, or "popping," which would throw metal out of the flask unless some means were provided for the escape of said gases. To accomplish this purpose a hole was made extending almost through the core, lengthwise, about the size of an ordinary rye straw. When the top half of the flask was put in place a hole was punched through the sand down to and connecting with the hole in the core,

affording a vent for the escape of the gases. When this was properly done the gases would not cause a popping out of the metal. When the flasks were made ready to receive the molten metal they were set in rows on the floor of the foundry and runner-cups placed on top of them, into which the metal was poured and through which it ran into the flask. The metal was in a large kettle, which was moved along over the rows of flasks by means of a crane. When it reached the proper point over the runner-cup of the flask it was stopped and a hole opened in the bottom of it by means of a lever and a valve, from which the metal runs into the runner-cup and flask. When the flask is filled the valve is closed and the kettle moved on to the next flask. The services of seven men were required to do this work. It is customary for another man to follow behind the kettle, three flasks distant, for the purpose of seeing whether the mold or flask is completely filled with the metal, and if it is, to throw on a small quantity of sand. If he finds it is not filled he notifies the foreman in charge of the kettle and it is run back and the flask filled. These operations were repeated usually twice a day. At the time of appellee's injury he was following the kettle for the purpose of ascertaining if the flasks were all filled, and while so engaged, from some cause metal popped out, striking him in one eye and completely destroying it.

Appellee was a Syrian, had been in this country less than two years, and had been at work for appellant about two months when he was injured. He was not a molder and had nothing to do with preparing the flasks for the metal. His chief employment was in making the runner-cups, and this he did in a room by himself. The cores were made and flasks prepared by others, and when they were ready to pour the metal in them appellant's foreman would call appellee for the purpose of following behind the kettle to see that the flasks were filled with the metal. The proof shows that explosions or poppings were caused sometimes

while the metal was being poured into the flask if it came in contact with a nail, a little piece of wood or something of that character in the flask. When poppings resulted from these causes they occurred at the time the metal was poured, but when they occurred from an imperfect vent in the core they would take place a few seconds afterwards, and for this reason the man following the kettle kept three flasks behind it. There was testimony to the effect that poppings from the latter cause occurred frequently, but appellee testified that during his employment there he had never known one to occur. The instructions given appellee by appellant's foreman were of the most meager character. It does not appear that he at any time informed appellee of the dangers of popping from a clogged vent but ordered him to look into the flask from a position directly over it, and when he discovered appellee looking in sideways, swore at him and ordered him to "look in straight."

Questions of assumed risk and whether the relation of fellow-servants existed are ordinarily questions of fact to be submitted to the jury. They only become questions of law where the facts are conceded or are so conclusively proven that there is no reasonable chance for reasonable minds to reach different conclusions. (*Chicago and Eastern Illinois Railroad Co.* v. *Driscoll,* 176 Ill. 330; *Clark* v. *Chicago, Rock Island and Pacific Railway Co.* 231 id. 548; *Wrisley Co.* v. *Burke,* 203 id. 250.) The evidence in this case warranted the submission of these questions to the jury, and the judgment of the Appellate Court affirming the judgment of the circuit court is conclusive upon us.

A further contention of appellant is, that it appears from the evidence that one of several causes might account for the accident which injured plaintiff, and that the accident is no more traceable to a cause for which appellant would be liable than to one for which it would not be liable. If this question were open to review by us the position is not tenable. The evidence tends to show, and counsel for both

parties practically concede, that the accident was caused by gases generated in the core that were unable to escape; and even though such escape might be prevented in more than one way, the duty of providing for the escape of gases devolved upon the appellant, and the evidence tended to show that it was by reason of its negligence in discharging this duty that the metal popped and caused the injury.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*