## James Kavanaugh, Appellee, v. Morgan & Wright, Appellants.

## Gen. No. 14,189.

1. MASTER AND SERVANT—*basis of liability where servant injured while especially assigned to extra-hazardous work.* If a servant is taken from his regular work and ordered to perform more dangerous duties and is injured thereat he can only recover where his declaration alleges a failure to give him proper warning of the attendant danger, such danger not being obvious, or where the declaration shows that the servant was of immature years and was unable to comprehend the dangers of the duties to which he was assigned.

2. PLEADING—*when declaration will not support recovery.* A declaration which does not contain allegations supporting the negligence shown by the evidence will not support a recovery.

3. PLEADING—*what declaration charging negligence must show.* A declaration charging negligence and a consequent injury must show the causal connection between such negligence and injury.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. BEN M. SMITH, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1907. Reversed with finding of facts. Opinion filed December 4, 1908.

CALHOUN, LYFORD & SHEEAN, for appellant; ROBERT J. SLATER, of counsel.

WALTER A. BRENDECKE and PAUL C. SCHUSSMAN, for appellee.

MR. PRESIDING JUSTICE SMITH delivered the opinion of the court.

This appeal is prosecuted to reverse a judgment of the Superior Court in favor of appellee and against appellant, Morgan & Wright, for $2,488, on account of personal injuries sustained by appellee while in the employ of appellant, on or about June 21, 1905.

The original declaration consisting of two counts, was filed January 19, 1906. The first count thereof alleges: "Whereas, the defendant heretofore, to wit, on or about the 21st day of June, A. D. 1905, in the city of Chicago, in the county of Cook and State of Illinois, was then and there the owner, was possessed and had control of, and was using and operating a certain machine commonly called, to wit, a rubber mixer; that said machine then and there had a certain heavy iron pan used in connection with and as a part of said machine which was then and there situated and placed at and near a certain shafting so that the said pan was apt and likely to be pushed, shoved and thrown toward the front of said machine and against the person operating said machine, unless the said pan was properly fastened and secured so as to limit its motion and prevent from striking upon and against the person operating said machine; that the said pan of said machine was then and there not properly fastened and secured so as to limit and prevent the same from striking upon and against the person operating said machine; all of which facts the defendant then and there knew, or ought to have known; that the plaintiff was then and there in the employ of the defendant; that the defendant then and there carelessly and negligently commanded, ordered, directed and permitted and allowed the plaintiff to work in and about the operating of said machine while the same was so in an unsafe and dangerous condition; by means and in consequence

whereof said heavy iron pan then and there, while the plaintiff with the exercise of ordinary care was so engaged in and about said machine, struck upon and against the plaintiff, and then and thereby greatly injured him, both internally and externally, and he became therefrom forever crippled, lame and diseased.''

The theory of this count is that appellant, knowing that the machine was so constructed that the shafting would throw the pan out against the person operating the machine, negligently ordered appellee to work at the machine and he was injured thereby.  This count must be considered as basing the right to recover solely on the negligent order, or, as basing the right to recover upon negligence, in constructing the machine in the manner described, and the order to operate the same.

The second count of the original declaration, after averring ownership and operation of the machine by appellant, alleges that appellee ''was then and there in the employ of the defendant as a common servant for hire, and as such was then and there pusuant to the commands, orders and directions of the defendant, engaged in and about the operating and running of said machine, that the defendant then and there so carelessly, negligently and improperly constructed, kept and maintained said machine and said revolving shafting that when said machine was in operation and said shafting was revolving, the said pan was apt to and would be pushed, hurled, thrown and would fall against and upon the plaintiff, while he was in the exercise of ordinary care, engaged in and about the operating of said machine, struck upon and against the plaintiff, and then and there greatly injured him both internally and externally, and he became therefrom forever crippled.''

This count bases the right of appellee to recover upon the ground of negligent construction of the machine by which the pan was placed so near a revolving shaft that it would be thrown out against the operator

of the machine by the shaft, and that appellee was employed by appellant in and about operating the machine, and the pan struck against him.

Subsequently, on July 10, 1906, by leave of court appellee filed two additional counts. In the first of these counts the same negligent construction is alleged, and that the iron pan was "not properly fastened and secured so as to limit its motion and prevent it from being thrown against the person operating said machine"; and that appellant recklessly and wantonly ordered and directed appellee to work in and about operating said machine.

The second count of these additional counts alleges that appellant recklessly and wantonly constructed, kept and maintained the machine and revolving shaft so that as a direct result thereof, when the machine was in operation and the shafting was revolving, the said pan was pushed and hurled against appellee while he was engaged in operating the machine.

On June 11, 1907, two more additional counts were filed. In the first of these it is alleged that the regular and ordinary duties of appellee did not include the operation of the machine; that such operation by one not acquainted with its construction and inexperienced in operating it was accompanied with danger to the operator, and this fact was known or ought to have been known to appellant; that appellee was not acquainted with the construction of rubber mixers, and did not have sufficient experience to operate said mixer properly and with safety to himself; which fact appellant knew or ought to have known; that appellant negligently and carelessly did not instruct appellee in the proper and safe operation of said machine and warn him of the dangers of said machine, and as a result appellee was injured.

The second of said counts, after alleging the ownership of said machine and the employment of appellee, and that the regular and ordinary duties of appellee did not include the operation of a rubber mixer, avers

that it was necessary and proper to feed into such machine not more than a certain usual and proper amount of material; which facts were or ought to have been known to appellant; that appellant furnished and supplied appellee with a too large, unusual and improper amount of material, and as a proximate result appellee was injured.

At the close of the plaintiff's evidence, and again at the close of all the evidence, appellant moved the court to instruct the jury to find the defendant not guilty, and tendered written instructions to that effect. The court refused to grant the motion and marked the instruction "refused". Motions for a new trial and in arrest of judgment were overruled.

The undisputed evidence in the record shows that appellant was engaged in the manufacture of products composed of rubber and other compositions, and that in its business it made use of the machine in question, together with other similar machines, for the purpose of grinding and mixing certain compounds and rubber. This machine was known as No. 5. It consisted of two parallel, horizontal, hollow iron or steel rollers about five feet in length and eighteen inches in diameter, supported by an iron frame attached to each end of the rollers, and the rollers were operated by means of gears at the end of each roller, to which power was communicated through shafting, which revolved from the operator. The rollers revolved in opposite directions, towards each other at the top. They were adjustable so that the space between them could be increased or diminished by means of screws on the frame of the machine. The bottom of the rollers was about two and one-half feet from the floor. Sixteen or eighteen inches below the bottom of the rollers was a pan about six feet long and four feet wide, which extended beneath the rollers. This pan rested upon two iron rods, eight or ten inches from the floor, extending from side to side of the frame, one being under the side of the pan next to the operator and one on the

opposite side. The pan was made of sheet iron. The bottom was flat and smooth and not fastened or attached to the rods by cleats or otherwise than by its weight, which is not shown. Beneath it was the shafting, bolted together with a flange coupling which came within an inch or two of the bottom of the pan.

Appellee testified that on June 20, 1905, the day before the accident, Henderson, appellant's general foreman, came to him in the basement of appellant's factory where he was engaged in other work, and told him to go up-stairs and run mill No. 5; that appellee went to the mill and found five boxes of stock between mills 5 and 6; that there were four boxes of one kind, which was light in color, and one box of another which was heavy and dark; that the lighter colored material was composed of about equal parts of compound and chunks of rubber and weighed about 70 or 72 pounds, and the heavier batch was composed of about 100 or 105 pounds of compound and 20 pounds of rubber.

Appellee says he began work on the four lighter batches, and continued working with them until about 11 o'clock the next morning. In doing the work the first operation was to put the chunks or rolls of raw gum or rubber from one of the boxes through the rollers, and permit it to be passed down between the rollers and flattened out. This caused it to fall down into the pan in the form of a sheet and piled it up. It was then placed on the rollers and again passed through them. This operation was repeated until the desired thickness of about one-half inch was obtained, and the rubber had become warm and soft, and adhered to the rollers, entirely covering the same. The compound was then spread on top of the rollers and soft rubber with a small shovel and ground or mixed into the rubber.

All of the five batches were worked by appellee in the same manner. The accident happened while appellee was working on the fifth or heavier batch. He had ground the rubber of this batch through the rollers and

warmed it, and while working the compound in, the composition began to loosen or drop away from the rollers and swing down towards the pan in large circles. The more compound he put in, the farther it swung down, until, when he had all the compound worked in, the part swinging down towards the pan became so long that it doubled and piled up on the bottom of the pan, forming a bunch or pile in the pan under the rollers. Appellee permitted this piling up to continue for five or six minutes, during which time the folds of material in the pan increased until when there were five or six folds in the pan one on top of the other, the material in the pan became so heavy that it stuck to the pan, and the rollers continuing to revolve dragged the pan out from under the rollers and against appellee's leg, breaking it.

This is in effect appellee's description of the cause and manner of the accident. There is no evidence in the record tending to show that the accident was caused in any other way, or by any other means. If the bottom of the pan had come in contact with the shafting underneath it, as averred in the declaration, the pan would have been thrown away from appellee, for the shafting was revolving from appellee, and the top of the shafting coming in contact with the bottom of the pan would have carried it in the direction in which it was moving. We are forced to the conclusion, therefore, that the negligent construction of the machine alleged in the declaration is not shown by the evidence, and that it did not cause the injury complained of.

It is somewhat difficult to determine whether the *gravamen* of the first count of the original declaration is the defective and negligent construction of the machine, or the giving of a negligent order to appellee by appellant, with the unsafe and dangerous condition of the machine as a matter of inducement. If it was the negligent construction complained of, the evidence, as we have seen, does not tend to support

it. If the gist of this count is the negligent order to appellee by appellant, then, the evidence tends to show simply and only that he was ordered to leave one service and engage in another and more dangerous work. Under such an order the liability, if any, must be predicated upon a failure to give proper warning of the attendant danger, in cases where the danger is not obvious, or where the servant is of immature years or unable to comprehend the danger, and the count does not make the necessary averments. Reed v. Stockmeyer, 74 Fed. 186; Paule v. Florence M. Co., 80 Wis. 350; Cole v. Chicago & N. W. R. R. Co., 71 Wis. 114. Nor does the evidence show a cause of action, if the averments of this count were sufficient. Appellee was a man of fifty-seven years of age at the time of the accident. He consented to do the work ordered without objection on account of his want of knowledge, skill or experience in doing such work. He had worked on this and similiar machines before. No negligence of appellant can be predicated upon such a state of facts as shown by the evidence. Cole v. Chicago & N. W. R. R. Co., *supra.*

The averment of this count that the pan was not properly fastened and secured must be held to apply to the danger arising from placing the pan "at and near a certain shafting so that said pan was apt and likely to be pushed against the person operating the machine." The only claim of negligence which this count avers and appraises appellant of, was the failure to provide against the danger arising from the shafting acting upon the pan. It appears clearly from the evidence, and without controversy, that the accident happened because the material which appellee was grinding or passing through the mill dragged the pan out against him. The evidence, therefore, if it be conceded it shows a cause of action, wholly fails to support the averments of the count.

It is familiar law requiring no citation of authorities that "one object of a declaration is to state

the facts relied upon for recovery so plain that the defendant may be prepared to meet them. This object in pleading would be entirely defeated if a plaintiff had the right to aver in his declaration one ground of action, and on the trial prove another and different ground." T. W. & W. Ry. Co. v. Foss, 88 Ill. 551. "The rule is fundamental that a plaintiff must recover, if at all, upon the case made by his declaration, and in the application of this rule to actions for negligence, plaintiff cannot allege a specific act of negligence, and recover upon proof of negligence of a different character. North Chicago Street Railroad Company v. Cotton, 140 Ill. 486; Chicago, Burlington & Quincy Railroad Company v. Bell, 112 id. 360." C. & E. I. R. R. Co. v. Driscoll, 176 Ill. 330, 336; International Packing Co. v. Cichowicz, 107 Ill. App. 234.

The second count of the original declaration attempts to state a cause of action for the negligent construction of the machine in substance as set forth in the first part of the first count, namely: the liability of the pan to be forced out by the action of the revolving shaft. It is incomplete, however, for the reason that it fails to state any causal connection between the negligence set forth and the injury to the plaintiff. But, such omission being supplied, the evidence, as we have seen, shows that the revolving shaft had no connection with the injury, and hence, no recovery can be sustained under this count upon the evidence.

There is no evidence in the record tending to show that the acts alleged in the two additional counts filed July 10, 1906, were "recklessly and wantonly" committed. In other respects the negligence averred in these counts is the same as in the original declaration, and what we have said in the discussion of the case made under these counts applies with equal force to these counts.

The first additional count filed June 11, 1907, al-

leges that appellee was not acquainted with the construction of rubber mixers, and did not have sufficient experience to operate said mixer properly and with safety to himself, which fact appellant knew or ought to have known; that appellant negligently and carelessly did not instruct appellee in the safe and proper operation of said machine, and warn him of the dangers of the machine; and as a proximate result, appellee, while exercising ordinary care, was injured.

In order to support a recovery under this count it was necessary for appellee to prove that there was a danger incident to the construction and operation of the machine in question; that the danger was known to appellant but unknown to appellee; that appellee's lack of knowledge or appreciation of the danger was excusable, and that appellant knew or should have known that appellee was thus excusably ignorant of the hazard and was thereby exposed to a hazard or danger beyond those which he was presumed to contemplate as incident to the employment; that appellant failed to warn or instruct him with reference thereto; and that appellee was in the exercise of ordinary care.

No case can be found, we think, which holds that the mere fact that the employer requested or ordered his employe to perform a temporary work, outside of his ordinary employment, was a violation of any duty which he owed to his employe. Whether such an order be a violation of such duty depends always upon the surrounding circumstances. If the particular work ordered to be done is of a dangerous character, and requires peculiar skill in its performance, and the person directed to perform such work has not the requisite knowledge or skill for doing the work with safety, and such want of skill or knowledge is known, or might be reasonably supposed to be known, to the employer, the direction of the employer to do the work, without giving warning of the danger or instruction, might be held to be a violation of duty which he owes to

his employe, even though the employe undertakes to do the work without objection or protest on his part. Cole v. Chicago & N. W. R. Co. *supra*. But, in order that a master may be properly charged as being thus negligent, and made liable for resulting injury, it must be made to appear that he knew, or by the exercise of reasonable care and observation might have known, of the inexperience, disqualification and immature judgment of the servant.

The evidence in the record shows that appellee was at the time of the accident a man of mature years, large experience and intelligent; that he had for many years been a farmer and for sixteen of those years had conducted a farm for himself, and was necessarily acquainted with machinery, especially of a simple character, such as the machine in question; that for nine or ten years he had been in the employ of appellant, and during at least a large part of that time, had worked near or upon this and other similar machines, and three months upon this particular machine. He knew that pans on machines of the character of the particular machine in question were frequently thrown out, and while he testified that he did not know that he had ever seen it happen, he admitted that he had heard the operators talk about it, and said in his testimony: "Oh, God, I could not tell you how many times I have heard them talking about it". He testified he had seen pans move backward and forward on other machines four or five inches, and on some of the larger machines more than that, although he "had never seen them come out with any degree of force to be alarmed at."

The proof shows, in our opinion, that appellee had large experience with these machines before he was injured, and that this machine and the other similar machines on which he had worked were of the most simple construction, and that all of the parts of the machine in question were open and obvious to the most ordinary observation. Appellee's description of the

machine and its parts, including the dimensions and location of such parts, the method by which it was operated, and the manner of supporting the pan shows that he was familiar with the machine and its construction and operation. According to the testimony of Henderson, appellant's general foreman, appellee was a mill man, mixer and lengo maker. He would make lengo for three weeks at a time, or a month and a half or two months, and he was then sent back to number 5 mill, sometimes to another mill; that he worked on number 5 mill about one-half or two-thirds of the entire time, and the rest of the time he made lengo. He was considered the regular operator of number 5 mill. He never made any complaint of the pan coming out from the mill. To the same effect is the testimony of Redmond and Bagley, assistant foremen of the mill department.

From the testimony and the circumstances of the case as developed in the proof we are of the opinion that the preponderance of the evidence is decidedly against appellee's right to recover under this count of the declaration.

The second additional count filed on June 11, 1907, predicates liability upon appellee's inexperience; that for the safe operation of the machine it was necessary to feed into it not more than a certain amount of material, and that appellant "furnished and supplied plaintiff with a too large, unusual and improper amount of material", and the accident happened as a proximate result thereof.

The only evidence of the order given to appellee was that the foreman "told me to go up and run that mill No. 5." Appellee does not claim in his testimony that Henderson told him to run any particular batches of stock, or quantities of stock, or that he was told to run such stock as he might find there in the particular quantities in which he might find it at or near the mill. The evidence does not show how the particular batches which appellee mixed came to be at or near the mill.

Henderson did not know how much material there was in these particular batches. He testified that the largest batches he ran on mills of the type of No. 5 were about 100 pounds. By whom the compounds were actually mixed and whether by the authority and knowledge of appellant was for appellee to show, but it is not shown.

We have stated *supra* appellee's evidence as to the manner in which he fed the material into the mill and how it piled up in the pan for five or six minutes before the pan was shoved out. He knew during this time that the action of the rubber was liable to cause trouble and he testifies that at the time he grabbed his knife and was about to cut it off, when the pan was thrust out. His evidence shows, we think, that he had ample warning that he was putting too much material in the machine and yet he continued to feed the mixture into the machine after he knew it was likely to get up between the rollers and stop them and "break something." This evidence, we think, tends to prove contributory negligence on the part of appellee, and that no recovery under this count can be sustained.

It is our opinion, therefore, that the evidence fails to sustain any count in the declaration, and the judgment must be reversed for that reason.

These questions are raised, we think, by the motion for a peremptory instruction, the motion for a new trial and the motion in arrest of judgment, and appellee's contention that they are not properly raised cannot be regarded as well founded.

Holding these views upon the merits of the case, we do not find it necessary to consider the other errors assigned and argued.

The judgment of the Superior Court is therefore reversed with a finding of facts.

*Reversed with finding of facts.*