Laura Cochran, Administratrix, Appellee, v. Kankakee Stone & Lime Company et al., Appellants.

Gen. No. 5,741.

1. NEGLIGENCE—*dangerous premises attractive to children.* Where the owner of land has unguarded dangers thereon, of such a nature as to be attractive to childish curiosity and instincts, such attractions are regarded as holding out implied invitations to children of tender years to come upon the premises, and the owner must use ordinary care to keep them in safe condition.

2. NEGLIGENCE—*dangerous premises attractive to children.* Where an injury results to a child from unguarded conditions upon the premises of another, the questions whether the premises are dangerous, or calculated to be attractive to a child of tender years and liable to lead such child into danger, and whether the child lacked such intelligent capacity and experience as to bring it within the protection of the rule, are for the jury.

3. LANDLORD AND TENANT—*both liable for dangerous premises.* Where premises are rented in a bad state of repair the landlord is liable for injuries caused thereby to third persons, as well as the tenant.

4. EVIDENCE—*of no previous accident incompetent.* In a case for damages for the death of a child, who was drowned in a pond, evi-

dence that no person had been drowned there before, is incompetent.

5. INSTRUCTIONS—*abstract propositions.* Giving of an instruction, stating an abstract proposition of law which is correct and does not mislead the jury, is not error.

Appeal from the Circuit Court of Kankakee county; the Hon. CHARLES B. CAMPBELL, Judge, presiding. Heard in this court at the October term, 1912. Affirmed. Opinion filed April 8, 1913.

HUNTER & SCHNEIDER, for appellant Stone & Lime Co.

H. K. & H. H. WHEELER, for appellant Quarries Company.

COOPER & HOBBIE, for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

Harry Walter, a child, was drowned in a pond within the city limits of Kankakee. He left a mother, a brother and a sister, surviving him. His administratrix brought this suit to recover damages for the loss to the next of kin by his death. The suit was against the Kankakee Stone & Lime Company and the Kankakee Quarries Company. Each pleaded not guilty, and the former also pleaded the Five-Year Statute of Limitations. At the first trial there was a verdict of not guilty. A new trial was granted and at the next trial plaintiff had a verdict against both defendants for $1,250 and a judgment, from which both defendants prosecute this appeal.

Where the owner or occupant of land has unguarded dangers thereon, of such a nature as to be attractive to a child and to appeal to his childish curiosity and instincts, such dangerous attractions are regarded as holding out implied invitations to children of tender years to come upon the premises for their own pleasure, and the owner or occupant of the premises must

use ordinary care to keep them in safe condition, because such children, being without judgment, are liable to be drawn by childish curiosity into places of danger and to be there injured by reason of such unguarded attractions. In any given case where an injury results to a child from unguarded conditions upon the premises of another, the questions whether the premises are dangerous, whether they are calculated to be attractive to a child of tender years and liable to lead such a child into danger, and whether the child had such a lack of intelligent capacity and experience as to bring him within the protection of said rule, are questions of fact for the jury. These principles are stated and enforced in Linnberg v. City of Rock Island, 136 Ill. App. 495 and 157 Ill. App. 527, after which latter decision the Supreme Court denied a certiorari. The cases cited in those opinions need not be recited here.

The premises were a quarry, which had been excavated by the Stone & Lime Company some twenty years before and had filled with water. The banks were in many places precipitous and the water was so deep that a child falling therein could not get out. There were fish in the pond and shelves of stone on the margin of the pond, where one could sit and fish. The pond was in a residence neighborhood, and near several schools. There was a fence along the pond, a part of the way, but there was a gate from the street which had been down for from a week to a month or longer and, at another place, an opening in the fence sufficient to permit persons to pass through to the pond. Many children went there in the winter to skate and in the summer to fish. On the margin of the pond was an old boiler and engine, long since unused, about which the children often played. The deceased was ten years, ten months and six days old, and he and his mother's family had lived in Kankakee but two weeks. On Sunday afternoon, April 17, 1910, he and some playmates, younger than he, went to the pond to

fish, while his mother was away from home. He prepared for fishing by getting a willow pole, a piece of string, a bent pin and some bread for bait. When they reached the pond he sat down and appeared to begin to fish, while his mates went a little further on to where the engine and boiler were. Various persons heard an exclamation by him and saw him in the water or just falling into it, but no witness saw what caused him to fall. The day before he had gone there, and his mother had punished him for so doing. It is clear that the evidence makes a case for the decision of the jury upon the questions of fact above stated. The age of the child was not greater than in some of the reported cases, where a liability has been held to exist. The fact that the mother chastised her boy for going to the pond the day before tends to show due care on her part. The fact that the boy went there the next day in spite of the punishment, and equipped with the childish material above mentioned, tends to show his childish character and the lack of mature judgment. The state of the evidence would not warrant our reversing the conclusion of the jury upon the facts.

The premises were owned and had been for many years by the Kankakee Stone & Lime Company and it created the conditions which were dangerous and attractive to children of tender age. While they were in that condition, on March 30, 1906, it leased the premises to the Kankakee Quarries Company for five years and gave the lessee the right to make excavations and quarry and sell stone, etc., thereon. In the lease it was provided that the lessor within nineteen days from that date would construct and thereafter maintain a woven wire fence around and along said premises, where they were adjacent to a public street or place, which fence should be four feet high and of such strength and so constructed as to be suitable and sufficient to keep persons and animals off from said property and to protect them from the danger of entering or falling upon or into said property or any part

thereof.  This provision in the lease was a recognition by both parties of the danger of the pond, and the fence that was there when this child was drowned was not a compliance with the lease.  The law is that where premises are rented in a bad state of repair, the landlord is liable for injuries caused thereby to third parties, as we held in Everett v. Foley, 132 Ill. App. 438, where the authorities are collected.  The joint liability of both defendants was therefore established by the evidence, under the rules of law above stated.

The court refused to permit defendants to prove whether or not any child or person had been drowned in that quarry before the drowning of Harry Walter.  This ruling was not erroneous.  It would not have been a defense that no one ever had been drowned there before.  The depth of the water and the precipitous sides of the quarry hole were such that every person acquainted with the premises must have known that if a child fell therein, it was sure to drown unless speedily rescued by some one else.  That it was known to the defendants to be dangerous is also shown by the provision inserted in the lease.  That it was attractive to children is shown by the large numbers of children that had frequented the place regularly for years.  The question of the competency of the evidence has been settled against the contention of appellants in Hodges v. Bearse, 129 Ill. 87; Mobile & O. R. Co. v. Vallowe, 214 Ill. 124; and Chicago, W. & V. Coal Co. v. Brooks, 138 Ill. App. 34.

Complaint is made of the first instruction given at the request of appellee.  It is the same in substance and effect as the first instruction approved in Chicago & J. Elec. Ry. Co. v. Patton, 219 Ill. 214.  Appellee's third instruction was based upon the law relative to premises attractive to children of tender years, but did not define the rules for determining whether a child was of tender years, but it stated the rule of law correctly and did not direct a verdict and therefore did not assume, as is argued, that the deceased was a

child of tender years. The fifth instruction was an abstract proposition but was correct and did not mislead the jury and under such circumstances the giving of an abstract proposition is not error. We think the seventh instruction not erroneous, and the eighth is supported by the principles we have above stated. The city of Kankakee owned some of the premises adjacent to the premises of defendants upon which this pond was located, and the gate above referred to properly belonged to the city, and the object of the ninth and tenth instructions was to advise the jury that, even if they believed that the city of Kankakee was negligent and that that negligence contributed to the death of Harry Walter, that would not constitute a defense in behalf of appellants, and we conceive that those instructions stated the law and were properly given in this case. Several instructions were given in behalf of both defendants, and others in behalf of the Stone & Lime Company, and others in behalf of the Quarries Company, and the jury seems to have been very fully instructed for the defendants. So far as the instructions offered by any defendant were modified or refused, we are of opinion that those things of which they were deprived by such modification or refusal were sufficiently embraced in the instructions that were given for appellants. It may be that the rules of law in what are commonly known as "the turn table cases" have been extended far in applying them to ponds of water, as in City of Pekin v. McMahon, 154 Ill. 149, and the Linnberg cases, *supra,* and other like cases, but we regard that application as too firmly fixed in the jurisprudence of this State to be now denied.

The judgment is therefore affirmed.

*Affirmed.*